FRATERNIDAD PHI DELTA PI, recurrente *v.* JUNTA DE PLANIFICACIÓN DE PUERTO RICO, recurrida.

Número 36.

*Sometido:* 3 de mayo de 1954. *Resuelto:* 24 de mayo de 1954.

*Rodríguez Ema & Rodríguez Ramón,* abogados de la recurrente; *Rafael R. Fuertes* y *José E. Nieves Trilla,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

El día 18 de marzo de 1946 la Fraternidad Phi Delta Pi, recurrente en este caso, envió una comunicación a la Junta de Planificación de Puerto Rico, solicitando de la Junta que le informase si había alguna reglamentación en vigor que le prohibiese a la Fraternidad la construcción de su casa domiciliaria o club en la Urbanización Park Boulevard en Santurce. El Presidente de la Junta envió una carta a la Fraternidad el 19 de marzo de 1946, indicando que "actualmente no hay en vigor ningún reglamento que les prohiba la cons-

trucción de vuestra casa domiciliaria, ya que el solar donde radicará la misma llena todos los requisitos de esta Junta de Planificación".

Como cuestión de hecho, el inciso 7 del art. 18 del Reglamento de Zonificación, tal como regía en el año 1946, y hasta el 1950, disponía que en los distritos R-1 (o sea, en un distrito donde está localizada la casa de la Fraternidad) "solamente se usarán los edificios o pertenencias para los fines expuestos a continuación, incluyendo sus edificios y usos accesorios . . . (7) edificios para 'clubs' que no se utilicen primordialmente para fines comerciales". En el año 1950, después de haberse construído y haberse empezado a usar el edificio-casa de la Fraternidad, se enmendó el inciso siete para añadir la frase "mediante la autorización de la Junta de Apelaciones" (léase ahora Junta de Planificación).

Previa solicitud al efecto, el 31 de octubre de 1947 el oficial de permisos extendió a favor de la Fraternidad un permiso para construir un "edificio de concreto de una planta *para club*", (bastardillas nuestras), en la calle Guerrero, en la Urbanización Park Boulevard de Santurce. En el documento concediendo el permiso se hizo constar que "este edificio no podrá usarse hasta que este Negociado haga la inspección final y se otorgue Permiso de Uso, y al efecto se le incluye blancos de solicitud del mismo". La Fraternidad inició entonces y terminó la construcción del edificio, y procedió a usarlo como su casa domiciliaria o club, sin haber solicitado u obtenido permiso de uso alguno. El primero de agosto de 1950 el Oficial de Permisos extendió a favor de la Fraternidad un permiso de enmienda para ampliar el edificio, consistiendo la enmienda en la construcción de una marquesina. La Fraternidad siguió usando el edificio. El 2 de mayo de 1952 la recurrente solicitó un permiso de uso del Oficial de Permisos. Este último resolvió, el 8 de mayo de 1952, denegar el permiso solicitado, por el fundamento de que, estando ubicada la casa-club en una zona residencial, el uso de la misma tenía que ser autorizado por la Junta

de Planificación, de acuerdo con el inciso 7 del art. 18 del Reglamento de Zonificación, según fué enmendado en el año 1950. No conforme con dicha decisión la peticionaria, con fecha 14 de mayo de 1952, radicó un recurso de apelación ante la Junta. Se celebró una vista a la cual comparecieron la peticionaria y varios opositores, vecinos de la peticionaria, que alegaron que en la Fraternidad había ruidos y bullicio continuos e irritantes, que destruían la paz y tranquilidad del vecindario. La Junta dictó resolución el 11 de febrero de 1953, confirmando la decisión del Oficial de Permisos y denegando el permiso solicitado, porque las actividades sociales de la peticionaria (bailes, reuniones, etc.) "producen grandes aglomeraciones de personas, las cuales tienen que estacionar sus automóviles a los lados de la calle" y porque "las condiciones generales de la pertenencia no brindan la debida protección a la salud, seguridad y bienestar de las residencias limítrofes, y tienden a reducir los valores de la propiedad establecidos (sic) en las áreas vecinas. Estas condiciones consisten principalmente en la inapropiada ubicación de la pertenencia para los fines a que se dedica, y la falta de área suficiente (420 metros cuadrados) para tales fines," y "que es contrario al interés público autorizar en táles circunstancias el permiso solicitado por la peticionaria".

El 24 de junio de 1953 la Junta declaró sin lugar una moción de reconsideración interpuesta por la peticionaria, por los fundamentos adicionales de que la peticionaria "no hizo uso de su derecho a obtener el permiso de uso para su casa-club allá para el año 1947, fecha en que fué construído el edificio, y en cuya fecha no existía la enmienda al inciso 7 del art. 18 del Reglamento de Zonificación, la cual exige la previa aprobación de la Junta para edificios a usarse para clubs en zonas residenciales", y que "la peticionaria se ha sometido voluntariamente a los requisitos del art. 18, inciso 7 del Reglamento de Zonificación, según ha sido enmendado, al acudir en solicitud de permiso de uso y luego entablar el

presente recurso de apelación para ante esta Junta, luego de estar vigente la referida enmienda".

La peticionaria ha recurrido para ante este Tribunal, alegando esencialmente que, en vista de lo dispuesto por el mencionado inciso 7, al construirse el edificio, en vista de que el Oficial de Permisos había extendido un permiso de construcción del edificio a ser usado como club en una zona residencial y en vista de las inversiones reales hechas por la recurrente en la construcción del edificio, a tono con el Reglamento y el permiso concedido, la recurrente tenía y tiene un derecho adquirido (*vested right*) al uso de la propiedad que no puede ser vulnerado retroactivamente por la Junta, siendo irrazonable, arbitraria y lesiva a los derechos constitucionales de la recurrente la resolución denegatoria de la Junta.

En 58 Am. Jur. 1034, 1035, secs. 173 y 174, se dice lo siguiente:

"Enmiendas a las leyes de zonificación han sido sostenidas en un número de casos, rechazándose la contención que ellas conllevaban un menoscabo de derechos adquiridos bajo la ley de zonificación como ella prevalecía antes de las enmiendas. Sin embargo, hay casos en que se ha resuelto que una municipalidad no está autorizada a afectar, por enmiendas, derechos adquiridos por un dueño de una propiedad bajo los reglamentos de zonificación prevaleciendo anteriormente. En varios casos se ha establecido la regla que una persona que compra una propiedad puesta en determinada clasificación por una ordenanza general de zonificación tiene derecho a depender en que la propiedad permanezca en esa clasificación a menos que el bienestar público exija un cambio. De todos modos, al determinar la validez de una enmienda, tal como se pueda aplicar a una propiedad específica, el hecho de que la propiedad se compró a base de la clasificación anterior a la enmienda, puede ser tomado en consideración . . . (sec. 174). Aunque algunos casos sostienen la aplicación de una ordenanza de zonificación o negocios existentes, la regla general es al efecto de que una ordenanza de zonificación no puede tener el efecto de suprimir o remover de un distrito particular un negocio que sea de otro modo legal *o un uso que ya ha sido establecido*. En forma similar se ha decla-

rado que el uso de bienes inmuebles debe estar inmune de reglamentos prohibitorios aprobados en virtud de enmiendas a la ley de zonificación después que se ha empezado a usar la propiedad. Hay también casos en que se ha resuelto que un municipio no tiene derecho a aprobar enmiendas que causen perjuicios innecesarios a alguien que haya comprado, o arrendado a perpetuidad, o mejorado cierta propiedad descansando en los reglamentos originales. De otro lado, se ha resuelto que el mero hecho de que una ordenanza previa exceptúa cierta parcela de terreno de un distrito residencial no le concede a sus dueños derecho adquirido alguno a que continúe la excepción, en tal forma que ellos puedan, por ese fundamento, atacar la validez de una ordenanza posterior que revoque la primera, y que incluya la parcela en cuestión dentro del distrito residencial. Más aún, se ha resuelto que el hecho de que la propiedad haya sido comprada o arrendada, o que se hayan hecho planes, con la intención de usar la propiedad para un propósito permisible bajo los reglamentos de zonificación existentes, no impide la aplicación a esa propiedad de una enmienda posterior que prohiba su uso para tal propósito. Esta última regla es especialmente aplicable *cuando no se ha iniciado trabajo o construcción alguna sobre la propiedad,* pero también se ha resuelto que es aplicable a pesar de que se hayan hecho *cambios triviales* en la propiedad, y que se haya incurrido en gastos *preliminares* para el uso prohibido por la enmienda. Se ha llegado al mismo resultado cuando se ha iniciado la construcción, sin antes obtener los permisos apropiados y requeridos, por un dueño que sabía que el distrito se iba a zonificar de nuevo." (Bastardillas nuestras.)

Al mismo efecto de los pronunciamientos anteriores, véase la anotación en 138 A.L.R. 500, 501, *et seq.* En la pág. 505 de esa anotación se indica lo siguiente:

"La revocabilidad de permisos o licencias de construcción expedidos por municipios es el objeto de una anotación en 40 A.L.R. 928. Allí se expone que, el peso de las autoridades determina que una licencia o permiso de construcción no puede ser revocado arbitrariamente, especialmente cuando a base de tal permiso el dueño ha incurrido en gastos reales de significación, pero que hay un número de casos que sostienen la revocación expresa o implícita de tal licencia o permiso . . . En un número de casos se ha adoptado el criterio que una persona que ha obtenido un permiso o licencia de construcción, y ha proce-

dido a actuar bajo tal permiso, ha adquirido en virtud de ello un derecho adquirido que debe ser protegido contra disturbios por una enmienda posterior de la ordenanza de zonificación. *Dobbins* v. *Los Angeles* (1904) 195 U. S. 223, 49 L. ed. 169, 25 S. Ct. 18; *Sanderbugh* v. *Michigamme Oil Co.* (1930) 249 Mich. 372, 228 N.W. 707; *City of Coldwater* v. *Williams Oil Co.*, (1939) 288 Mich. 140, 284 N.W. 675; *New York State Investing Co.* v. *Brady* (1925) 214 App. Div. 592, 212 N.Y.S. 605; *Pelham View Apartments* v. *Switzer* (1927), 130 Misc. 545, 224 N.Y.S. 56; *People ex rel Ortenberg* v. *Bales* (1928) 224 App. Div. 87, 229 N.Y.S. 550 (confirmado sin opinión en 1929), 250 N.Y. 598, 166 N.E. 339; *Wasilewski* v. *Biedrzycki* (1923) 180 Wis. 633, 192 N.W. 989.

"Ese criterio se establece en *Pelham View Apartments* v. *Switzer* (1927), supra, en que se resuelve que uno que ha obtenido un permiso de construcción para una casa de apartamientos en un sitio donde las casas de apartamientos se permitían bajo las ordenanzas de zonificación que entonces estaban en vigor, y, descansando en tal permiso, compró la parcela, empleó un arquitecto, consiguió que se hiciera una mensura de la propiedad y procedió a excavar el sótano, no podía ser privado del derecho adquirido así obtenido, en virtud de una revocación posterior del permiso, de acuerdo con una enmienda de la ordenanza de zonificación. Se indicó lo siguiente: *'Cuando se ha actuado a base de un permiso de construcción y cuando el dueño ha procedido, como en este caso, a incurrir en obligaciones y, de buena fe, ha procedido a construir el edificio, tales derechos entonces constituyen derechos adquiridos de propiedad, protegidos por las Constituciones, federal* y del estado. *Aun si fuese lamentable que la construcción de esta casa de apartamientos sea desagradable para las personas que vivan en la vencidad; y aunque quizás sea lamentable que su propiedad quede así afectada, sin embargo, el derecho (del dueño) debe ser legalmente protegido, y los funcionarios públicos que representan al pueblo no pueden legalmente cambiar la ley de zonificación, y cancelar un permiso previamente expedido, cuando un comprador inocente de bienes inmuebles ha actuado de buena fe a base de una acción oficial de la ciudad, y ha obtenido en esa forma derechos adquiridos bajo su permiso de construcción* . . . Equivaldría a una confiscación, y a un abandono completo de derechos constitucionales, si un municipio pudiese revocar un permiso de construcción expedido bajo las condiciones que se presentan en este caso.'

En la misma forma, en *Dobbins* v. *Los Angeles,* supra, se resol-
vió que una enmienda a una ordenanza municipal constituía
una invasión arbitraria de derechos de propiedad, que no estaba
justificada como un ejercicio del poder de policía del Estado,
si en virtud de tal enmienda se prohibía la construcción de cier-
tas edificaciones para la manufactura de gas, si antes de tal en-
mienda se había iniciado la construcción bajo un permiso que
había sido expedido por la junta de comisionados de incendio."
(Véanse los demás casos discutidos en 138 A.L.R. 506 et seq.)

En el caso de *State ex rel Schroedel* v. *Pagels,* 43 N.W.2d
349, se resolvió que una persona que había comprado una
propiedad descansando en una ordenanza de zonificación, y
que había gastado sumas considerables de dinero, ($50,000)
en la preparación de planos y especificaciones para el desa-
rrollo de su propiedad, había obtenido derechos adquiridos
que debían ser protegidos contra un cambio en la ordenanza
a los fines de rezonificar el área, cuando no se había efectuado
cambio sustancial alguno en la naturaleza de la vecindad.

Efectivamente, la regla generalmente establecida, que
ahora adoptamos, determina que una vez se haya expedido
un permiso de construcción por un funcionario debidamente
autorizado, y la persona que ha obtenido el permiso ha ac-
tuado a base de ese permiso y ha incurrido en gastos sustan-
ciales, el derecho logrado en virtud de la construcción se con-
vierte en un derecho adquirido que el gobierno no puede
destruir en virtud de una revocación del permiso. Yokley,
*Zoning Law and Practice,* segunda ed. pág. 234, et seq., sec.
100, y casos allí citados y discutidos. Esa regla general es
esencialmente aplicable a las circunstancias de este caso. En
el caso de autos la recurrente construyó un edificio en virtud
de un permiso de construcción expedido a su favor, en cuyo
permiso se disponía específicamente que se le permitía cons-
truir un edificio "para club". En el permiso de construc-
ción se determinaba precisamente la naturaleza del uso del
edificio, esto es, el permiso de construcción equivalía también
a un permiso para el uso del edificio como club. La construc-
ción tenía que hacerse en cierta forma, o manera estructural

o arquitectónica, de acuerdo con el propósito autorizado de usar el edificio como casa-club. La recurrente incurrió en gastos sustanciales en la edificación, descansando en, y a base del, permiso concedido, y de las disposiciones claras y terminantes del Reglamento de Zonificación, cuyo art. 18, inciso 7, disponía, al concederse el permiso y al iniciarse y terminarse la construcción, que en zonas residenciales podrían usarse edificios para clubs. La recurrente, por lo tanto, tenía un derecho adquirido a que no se revocase el permiso, y, especialmente, a que no se revocase el permiso por el fundamento esencial aducido por la Junta en este caso, esto es, la "inadecuada ubicación de la pertenencia", esto es, la localización de una casa-club en una zona residencial. La Junta no podía utilizar ese fundamento para prohibir el uso del edificio porque precisamente la ley no reconocía ese fundamento como obstáculo cuando se construyó el edificio y, por el contrario, el Reglamento anteriormente vigente desvirtuaba expresamente la validez de ese fundamento, ya que permitía el uso de edificios para clubs en zonas residenciales, y el permiso expedido permitía la construcción y ubicación del edificio, *para club*, en esa misma zona residencial, y fué a base de esa autorización legal que la recurrente incurrió en gastos sustanciales para construir el edificio.

■ Se podría alegar que la Junta recurrida no revocó permiso alguno de construcción, sino que se limitó a prohibir el uso del edificio. Pero la prohibición del uso del edificio como club equivale a convertir en inefectivo el edificio, y a convertir en inútil y sin virtualidad práctica el permiso de construcción que ya había sido expedido, ya que el edificio se construyó precisamente para ser dedicado a un uso especial, y al anularse ese uso preciso, quedaría anulada la eficacia de la construcción. La prohibición del uso representa ser una revocación del permiso de construcción.

■ Se podría alegar, además, que la recurrente, después de obtener el permiso de construcción, lo hizo sujeto a la indicación específica contenida en tal permiso, al efecto de que

la recurrente tendría que obtener posteriormente un permiso de uso, y que al no obtener previamente un permiso de uso, la recurrente asumió las consecuencias de su propia omisión, y construyó a sabiendas de que tendría que obtener un permiso de uso.  Pero una vez expedido el permiso de construcción en la forma en que fué redactado, esto es, autorizando la edificación para determinado uso, esto es, para ser usada como club, era innecesario un permiso posterior expreso, de uso, ya que tal permiso de uso ya había sido incluído en el propio permiso de construcción.  Además, en vista de las disposiciones del Reglamento de Zonificación que regían cuando se expidió el permiso de edificación y cuando se inició y se terminó la construcción, el permiso especial de uso era innecesario y representaba ser más bien una función ministerial del Oficial de Permisos.  El inciso 7 del art. 18 del Reglamento, a que hemos hecho referencia, disponía en forma absoluta, antes del año 1950, que los edificios podían *usarse* como clubs en una zona residencial.  Tal uso ya estaba autorizado por el estatuto.  Cuando en el año 1950 se enmendó el inciso 7 para autorizar tal uso sujeto a la aprobación de la Junta de Planificación, tal limitación significaba que, a partir del año 1950, no existía el derecho ilimitado al uso de edificios como clubs en zonas residenciales, sino que la Junta podía autorizar o prohibir tal uso de acuerdo con las circunstancias que fuesen relevantes.  Al construir un edificio para club después de la enmienda del 1950, el constructor lo haría con conocimiento de la necesidad de obtener la aprobación del uso por la Junta.  Pero ello significa, además, que antes de la fecha de la enmienda, como ocurre en este caso, se construía bajo la impresión justificada de que no era necesaria la autorización de la Junta.

Alega la Junta recurrida que fué la propia recurrente la que solicitó el permiso de uso el 2 de mayo de 1952, sometiéndose, por lo tanto, al dictamen de la Junta de Planificación.  Pero habiendo ya logrado la recurrente un derecho adquirido al uso del edificio como club, su actuación al solicitar

un permiso especial de uso fué equivocada, e innecesaria, y no debe ser interpretada como una renuncia a sus derechos adquiridos.

Lo que estamos resolviendo, naturalmente, no coarta cualesquiera posibles remedios judiciales de los vecinos de la recurrente para proteger sus intereses legítimos, sin que estemos determinando si ellos tienen o no derecho a esos remedios. Nos limitamos a resolver que la actuación de la Junta de Planificación en este caso no es el remedio adecuado de los vecinos, y que tal actuación lesiona los derechos adquiridos de la recurrente a que la Junta de Planificación no revoque el permiso ya concedido y a que la Junta en sí no prohiba el uso del edificio como club, bajo las circunstancias que concurren en este caso.

*Debe revocarse y dejarse sin efecto la resolución recurrida, y devolverse el caso a la Junta de Planificación para que allí se sigan los procedimientos posteriores que no sean incompatibles con esta opinión.*

El Juez Presidente Sr. Snyder aun cuando está ausente al momento de firmarse esta sentencia, participó en la discusión del caso y concurre en la opinión.