TEXTO COMPLETO DE LA SENTENCIA
Se nos solicita que revoquemos una sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, dictada el 19 de octubre de 1998 y notificada el día 26 del mismo mes. Mediante la referida sentencia se desestimó la demanda de daños y perjuicios instada contra el Estado Libre Asociado, el Departamento de Transportación y Obras Públicas y la Autoridad de Carreteras y Transportación.
I
Ignacio Llerena, Inc. (Llerena) demandó al Estado Libre Asociado de Puerto Rico (ELA), al Departamento de Transportación y Obras Públicas (DTOP) y a la Autoridad de Carreteras de Puerto Rico (AC) en daños y peijuicios, alegando que por la acción y omisión culposa y negligente de la parte demandada había sufrido pérdidas valoradas en no menos de $561,665.68 y daños especiales montantes a $5,000,000.00.
En esencia, Llerena sostiene que él adquirió dos propiedades para desarrollar un proyecto comercial, a ser conocido como Llerena Commercial Park, luego que él consultara a la AC y ésta le informara que las referidas propiedades no estarían afectadas por obras de carreteras.
Alega que inició las siguientes obras y gestiones para llevar a cabo el proyecto:

"OBRAS

a) Preparación y acondicionamiento del terreno comprado, consistente en limpieza y demolición de ruinas y estructuras allí existentes, excavación, relleno de compactación a nivel de la calle y cimientos. $191,982.84

b) Estudio y diseño del proyecto, incluyendo estudio de suelo y plano de mensura. 2,185.00

c) Preparación de los estudios de suelo y diseño, incluyendo diseño estructural, mecánico, civil, *830 electricidad, plomería, planos de construcción, anteproyectos y solicitudes de permisos y endosos ante las diversas agencias gubernamentales. 65,300.00

d) Compra de materiales y suministros, incluyendo materiales prefabricados. 12,517.00

e) Financiamiento con entidades bancarias. $178,800.00

f) Actividades de supervisión, contabilidad, oficina, administración, vigilancia y otras. 4,382.00

g) Construcción de verja alrededor de las propiedades. 5,000.00

h) Gastos por servicios profesionales en la tramitación de los permisos para la aprobación del Proyecto, tasación de los terrenos y asesoramiento legal. 82,161.52"

Aduce que, posteriormente, el DTOP le informó que no endosaba el proyecto, ya que el mismo formaba parte de su programación para los próximos años. Alega que aunque el Estado le expropió sus propiedades y le pagó por los terrenos, no le compensó por los gastos incurridos en las obras y gestiones enumeradas anteriormente, ni por los daños especiales sufridos por no poder ver realizado el proyecto Llerena Commercial Park.
Luego de un extenso trámite y de la vista en su fondo, el tribunal dictó la sentencia desestimatoria de la cual se recurre.
El tribunal determinó como probados los siguientes hechos: que el 5 de abril de 1988, la AC le informó a Llerena que los inmuebles no estaban afectados por planos de construcción; que el 24 de mayo de 1989, la AC le notificó a Llerena que los inmuebles se encontraban afectados por una propuesta de construcción, razón por la cual no endosaba el proyecto Llerena Commercial Park; que las gestiones y gastos que la parte reclamaba se habían llevado a cabo entre el 10 de enero de 1989, fecha en que se firmó el contrato de construcción con el contratista Construction Engineering S.E., y el 15 de mayo de 1989, fecha en que le envió una carta a dicho contratista paralizando todos los trabajos del proyecto; y que a la fecha de estas gestiones, la parte demandada no había obtenido el permiso de construcción de la Administración de Reglamentos y Permisos (ARPE) para realizar el proyecto.
El tribunal resolvió que no procedía compensar a Llerena por los gastos incurridos en los planos y gestiones administrativas preliminares relacionadas a su proyecto de construcción porque no se cumplían los requisitos esbozados por el Tribunal Supremo en Hampton Development Corp. v. E.L.A., 139 D.P.R. 877 (1996), para que procediera dicha compensación, a saber, que se hubiera expedido permiso de construcción y que la persona hubiese actuado a base del mismo.
De otro lado, el tribunal determinó que no existía una acción u omisión contributiva de negligencia por parte de las demandadas, por lo que no se había configurado acción de daños y perjuicios alguna; y que los ingresos dejados de recibir, no eran compensables.
Inconforme, Llerena acude a este tribunal imputando la comisión de los siguientes errores:

"1 ERRO EL HONORABLE TRIBUNAL AL DICTAMINAR QUE LA APELANTE NO PRESENTO PRUEBA DE LA NEGLIGENCIA DE LOS DEMANDADOS CONCLUYENDO QUE PARA EL 5 DE ABRIL DE 1988, LOS DEMANDADOS NO SABIAN QUE LOS INMUEBLES EN CUESTION ESTUVIERAN AFECTADOS POR ALGUN PROGRAMA DE CONSTRUCCION.

2. ERRO EL HONORABLE TRIBUNAL AL REQUERIR QUE LA APELANTE HUBIESE CONSEGUIDO EL PERMISO DE CONSTRUCCION PARA ENCONTRAR NEGLIGENCIA DE PARTE DE LA PARTE 
*831
APELADA Y NO CONSIDERAR QUE LAS PARTES DE HECHO ESTIPULARON QUE SE OBTUVO DICHO PERMISO.

3. ERRO EL HONORABLE TRIBUNAL AL NO CONSIDERAR QUE LA EXPROPIACION SE HIZO EN VIOLACION A LA RESOLUCION NUM. JPE-2, SEGUN SU SEGUNDA ENMIENDA VIGENTE A LA FECHA DE LA EXPROPIACION, VIOLANDO A SU VEZ EL DEBIDO PROCEDIMIENTO DE LEY, LO QUE CAUSO DAÑOS."

II
Mediante la aprobación de la Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. see. 3077, Ley de Reclamaciones y Demandas contra el Estado, la Asamblea Legislativa autorizó la presentación de demandas contra el Estado por las actuaciones culposas o negligentes de sus empleados, funcionarios o agentes en el desempeño de sus funciones y actuando en capacidad oficial. El Art. 2 (a) de la Ley Núm. 104, supra, dispone, en lo pertinente:

"Se autoriza demandar al Estado Libre Asociado de Puerto Rico antee! Tribunal de-Primera Instancia de Puerto Rico por las siguientes causas:

(a) Acciones por daños y perjuicios a la persona o a la propiedad hasta la suma de setenta y cinco mil (75,000) dólares causados por acción u omisión de cualquier funcionario, agente o empleado del Estado, o cualquier otra persona actuando en capacidad oficial y dentro del marco de su función, cargo o empleo, interviniendo culpa o negligencia...." 32 L.P.R.A. sec. 3077(a).
A tenor con esta ley, para que un demandante pueda prevalecer en un pleito de daños y perjuicios contra el Estado por los actos u omisiones de un empleado, agente o funcionario, es necesario que pruebe la concurrencia o varios elementos. Primero, tiene que probar que la persona que le causó el daño era agente, funcionario o empleado del Estado y que estaba actuando en su capacidad oficial al momento de causarle el daño. Segundo*, es necesario que el demandante pruebe que ese agente, funcionario o empleado, actuó dentro del marco de su función. En tercer lugar, el demandante tiene que probar que la actuación del empleado del E.L.A. fue negligente y no intencional. Por último, hay que demostrar relación causal entre la conducta culposa y el año producido. Leyva v. Aristud, 132 D.P.R. 489 (1993).
En su primer señalamiento de error, Llerena arguye que el tribunal erró al determinar que el demandante no presentó prueba de la negligencia de los demandados. Veamos.
Llerena argumenta que la causa próxima de las pérdidas y los daños que alegadamente sufrió fue la negligencia de las agencias apeladas al certificar erróneamente el 5 de abril de 1988 de que las propiedades que se proponía adquirir no estaban afectadas por obra alguna de carretera. Sostiene que desde el año 1987, a través del Ing. Harry Vafiadis, los demandados-apelados conocían que los terrenos estaban afectados por obras de carreteras y por la canalización del Río Piedras.
En el juicio, que tuvo lugar el 22 de octubre de 1997, la parte demandante-apelante presentó como testigos al Ing. Vafiadis, al Ing. José E. Hernández Borges, al perito CPA Armando Suárez y su propio testimonio a través de una deposición.
El Ing. Vafiadis testificó ser un ingeniero civil estructural con- experiencia en el diseño de carreteras por espacio de 40 años. Desde el año 1961, realizaba trabajos de diseño de carreteras para la Autoridad de Carreteras, aunque en el momento en que se celebró el juicio no tenía contratos con la Autoridad de Carreteras.
Expresó que a partir del 1971, empezó a hacer planos preliminares para la Ruta 66, según instrucciones de la Autoridad de Carreteras. Testificó también que desde mayo de 1987, trabajó como parte de los planos *832 esquemáticos de dicha Ruta 66, los esquemáticos de Intersección del PR-838 con la PR-1, según se describe en la carta del 19 de agosto de 1987, Exhibit 14 de la prueba estipulada por las partes. Expresó que la propiedad de la apelante se encontraba precisamente en dicha intersección, que la propiedad colindaba en el sur con el Río Piedras y la Estación Experimental y el frente de la propiedad colinda con la Carretera 838, en la Intersección con la PR-1.
Dijo que dicho cambio en la Intersección se hizo necesario porque había programada una salida de la Ruta 66, muy cerca de dicha intersección y había que eliminar el semáforo que estaba ubicado allí para que fluyera el tránsito de vehículos que bajarían de la programada Ruta 66.
Testificó sobre la carta del 27 de enero de 1988 (Exhibit 10 de la prueba estipulada) en la que la Autoridad de Carreteras le decía que había recibido consultas sobre el futuro de la Carretera PR-838 en el proyecto de la Ruta 66 y deseaba saber si las propiedades estaban afectadas, y sobre su contestación del 10 de febrero de 1988. En dicha contestación, les decía que iba a continuar trabajando en la Intersección PR-1 838, que el Ing. Olmeda, el 4 de febrero de 1988, le informó que había un centro comercial bajo consideración exactamente en la Intersección de la PR-1 y la Carr. 838; que pensaban cerrar la PR-838 porque se iban a eliminar un número de negocios en el área y que cualquier proyecto tenía que considerar la relocalización del Canal de Río Piedras. El Ing. Vafiadis testiticó que, normalmente, cuando las personas hacían consultas sobre la afectación de las propiedades, dichas consultas le eran referidas.
Contestó que en el caso de la apelante Llerena y su consulta de 24 de marzo de 1988, la misma no le fue consultada y que no importaba cuál de las alternativas en las que estaba trabajando los planos esquemáticos se utilizara, la propiedad de la Apelante resultaría afectada (Exhibit 15 de prueba estipulada).
Dijo que a la fecha en que él propuso los esquemáticos, desconocía si la propiedad del demandante se encontraba o no afectada. (Testimonio del Ing. Vafiadis según la Exposición Narrativa de la Prueba Estipulada).
El Ing. José E.. Hernández Borges testificó ser desde el 1990, el Director del Area de Diseño de la Autoridad de Carreteras. Que para marzo del año 1988, cuando la parte apelante sometió la consulta preguntando si las propiedades que iba a comprar estaban afectadas por algún proyecto de construcción y en abril de 1988, cuando le contestan, el Director lo era Efraín J. Irizarry. Testificó que algunos de los diseños de los proyectos que efectuaba la Autoridad de Carreteras los confeccionan consultores extemos y que en el caso de ese tramo de la Ruta 66 y la Intersección de la PR-1 con la PR-838 objeto de la controversia en este caso, el consultor extemo era el Ing. Harry Vafiadis. Que normalmente se refería a los consultores extemos las solicitudes de información que tenían en conjunto el Departamento de Obras Públicas y la Autoridad de Carreteras en la Unidad de Consultas. En el caso de la parte apelante, no aparecía en los récords que se hubiera hecho tal referido, ni existía constancia alguna de haberse realizado. (Este hecho fue estipulado por las partes en el Informe de Conferencia, Estipulación Número 15). Reconoció que en las cartas Exhibit 10 y 11 de la prueba estipulada de fecha anterior a la consulta de la parte apelante, ya otras personas vecinas de ese mismo lugar estaban solicitando información sobre la posible afectación de sus propiedades. Dijo que posterior a la carta del 5 de abril de 1988, fue que se incluyeron los inmuebles en la programación de la construcción de carreteras. (Testimonio del Ing. Hernández Borges según la Exposición Narrativa de la Prueba Estipulada).
Por otro lado, el Ing. Arturo R. Arroyo testificó haber sido la persona que contestó en su carácter oficial la consulta sobre la afectación de las propiedades planteada por la apelante en un formulario oficial conjunto del Departamento de Transportación y Obras Públicas en la Unidad de Consultas, que para ese entonces se encontraba integrada para el DTOP y la Autoridad de Carreteras, tal y como se desprende del membrete del formulario que llenó la parte apelante y la contestación que él suscribió cuando fungía como Ayudante del Director del Area de Planificación de la Autoridad de Carreteras.
Indicó que la práctica era referir la consulta a las diferentes Areas de la Autoridad de Carreteras y el *833 Departamento de Transportación y Obras Publicas que pudieran tener información sobre la afectación de una propiedad aún en la etapa de esquemáticos y planos preliminares. Que no recordaba el caso de la apelante en particular, pero que como en otras ocasiones, debió haber contestado a base de lo que le contestaron las personas encargadas de darle la información. Dijo que para la fecha en que escribió la carta, las propiedades en consulta no aparecían afectadas por obras de carreteras y que de él sospechar que en el futuro las propiedades estarían afectadas, habría contestado la consulta indicando que estaban afectadas, (Testimonio del Ing. Arroyo según la Exposición Narrativa de la Pmeba Estipulada).
A la luz de la pmeba testifical y de la pmeba documental presentada, el foro de instancia determinó que los demandados-apelados no habían incurrido en negligencia, ya que para el 5 de abril de 1983, éstos no sabían que los inmuebles estuvieran afectados por una futura constmcción de carreteras.
Resolvemos que la conclusión del foro recurrido está avalada por la pmeba documental y testifical presentada ante dicho foro. No encontramos que la pmeba sostenga la posición del demandante-apelante de que los inmuebles en cuestión se encontraban afectados por obras de carreteras para el 5 de abril de 198.8, Lo único que probó el demandante-apelante fue que desde el 1987, había planos esquemáticos sobre varias alternativas de la Intersección de la PR-838 con la PR-1, intersección en la que se encontraba la propiedad de Llerena, Más la existencia de esquemáticos o planos preliminares preparados por un consultor extemo de los demandados-apelados, no significa, ni es sinónimo de que las propiedades en cuestión se encontraran afectadas e incluidas en la programación de la constmcción de carreteras. La afectación de una propiedad es una etapa cierta y definida que es posterior a la fase preliminar de planos esquemáticos.
El propio testigo del demandante-apelante, el Ing. José Hernández Borges, Director de Diseño de la Autoridad de Carreteras y Transportación, testificó que cuando se estaba realizando el diseño de la intersección de la Ruta 66 con la Carretera PR-1, en fecha posterior a la de la carta del 5 de abril de 1988, fije que los inmuebles del apelante objeto de la consulta fueron incluidos en la programación de carreteras. Por su parte, el Ing. Antonio R. Arroyo, declaró que fue él mismo quien suscribió la carta del 5 de abril de 1988, donde Je informó al demandante-apelante que las propiedades no estaban afectadas, y que de sospechar que en algún momento futuro fuesen a estarlo, le hubiese indicado a los apelantes en su comunicación que sí se encontraban afectadas las propiedades.
Concluimos que el demandante-apelante no presentó pmeba que sustentara su alegación de negligencia respecto a los demandados-apelados. No habiendo probado la existencia del acto negligente, es forzoso concluir que no concurre uno de los elementos esenciales para que el demandante-apelante pudiera prevalecer en su pleito de daños y peijuicios contra el Estado.
III
Según dispuesto por el Tribunal Supremo en Phi Delta Pi v. Junta de Planificación, 76 D.P.R. 585 (1954), y en Hampton Development Corp. v. E.L.A., 139 D.P.R. 877 (1996), existen tres (3) requisitos esenciales para la procedencia de la compensación por gastos incurridos en los planos y demás gestiones administrativas preliminares relacionadas con proyectos de constmcción: (1) que se haya expedido un permiso de constmcción por un funcionario debidamente autorizado; (2) que la persona que ha obtenido el permiso, haya actuado a base de éste; y (3) que haya incurrido en gastos sustanciales.
El tribunal de instancia concluyó que la parte demandante-apelante no cumplió con los dos (2) primeros requisitos esbozados por el Tribunal Supremo. Expresó dicho tribunal que Llerena no contaba con los permisos necesarios para comenzar las obras de constmcción del proyecto Llerena Commercial Park, por lo que no cumplía con el primer requisito. Sostuvo el tribunal que Llerena nunca obtuvo un permiso de construcción, emitido por funcionario autorizado, para comenzar las obras de constmcción, y que el documento de la Administración de Reglamentos y Permisos (ARPE), fechado el 30 de agosto de 1989 que fuera presentado por Llerena como evidencia de permiso de constmcción, no constituia una aprobación para el inicio de las obras. Se *834 trataba, según el tribunal recurrido, de una notificación de aprobación bajo las disposiciones del Reglamento para la Certificación de Proyectos de Construcción, Reglamento de Planificación Núm. 12.
En cuanto al segundo requisito, el tribunal recurrido determinó que tampoco se cumplía. Reseñó el tribunal que las obras preparativas de construcción llevadas a cabo en los inmuebles comenzaron el 10 de enero de 1989, fecha de la firma del contrato de construcción con el contratista Construction Engineering, S.E. y se extendieron hasta el 15 de mayo de 1989, fecha en que Llerena le envió una carta al contratista ordenando la paralización de las obras. Sin embargo, concluyó el tribunal, no fue hasta el 30 de agosto de 1999 que Llerena radicó su solicitud de permiso de construcción, esto es, casi ocho (8) meses después de comenzadas las obras y tres (3) meses después de concluidas. Por lo tanto, aseveró el tribunal recurrido, los gastos en que incurrió Llerena en su proyecto no fueron basados en un permiso de construcción válidamente expedido.
Resolvemos que el segundo error señalado por Llerena tampoco se cometió. Las conclusiones del tribunal de instancia no son arbitrarias y tienen apoyo en la prueba presentada a la luz de la jurisprudencia aplicable. Llerena alega que las partes estipularon que se obtuvo el permiso de construcción el 30 de agosto de 1989. Independientemente de dicha estipulación, las obras y gastos que él reclama comenzaron el 10 de enero de 1989 y se extendieron hasta el 15 de mayo de 1989. Es evidente que los gastos incurridos por la parte demandante-apelante en las obras de construcción en el inmueble, por no haberse realizado basados en un permiso de construcción debidamente expedido, no son compensables, acorde con los requisitos enunciados en Phi Delta Pi, supra, y Hampton, supra. 
De otro lado, los daños especiales reclamados por Llerena por no ver realizado el proyecto Llerena Commercial Park, no son compensables. El Estado ha de pagar únicamente por lo que expropia o por la pérdida del valor del uso, no por las oportunidades que el dueño pueda perder como resultado de la expropiación. Adm. de Terrenos v. Nerashford Dev. Corp., 136 D.P.R. 801 (1994); Hampton, supra.
rv
Por último, Llerena señala que erró el tribunal al no considerar que la expropiación se hizo en violación a la Resolución Núm. JPE-2, según su segunda enmienda vigente a la fecha de la expropiación, violando, a su vez, el debido procedimiento de ley, lo que le causó daños.
El proceso de expropiación del inmueble, propiedad de la parte demandante-apelante, se llevó en el caso Estado Libre Asociado de Puerto Rico v. Llerena Commercial Park y Otros, civil Núm. KEF-90-207 y KEF-90-208 sobre expropiación forzosa. La sentencia fue dictada el 11 de octubre de 1991. Mediante dicha expropiación, el Estado Libre Asociado pagó $1,123,842.44 por los inmuebles del demandante-apelante. Luego de advenir final y firme la sentencia, la parte demandante-apelante presentó la demanda objeto de la apelación ante la consideración de este foro. No es sino hasta comparecer ante este Tribunal, luego de dilucidarse el juicio y dictarse sentencia en el tribunal apelado, que el demandante-apelante plantea la alegación de irregularidad en el proceso de expropiación. Dado el hecho de que la sentencia en el recurso de expropiación es final y firme, el demandante-apelante está impedido de relitigar la validez del proceso de expropiación por la doctrina de impedimento colateral por sentencia.
El impedimento colateral por sentencia surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, por lo que tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas. Sahar Fatach v. Seguros Triple S. Inc., Op. del 25 de marzo de 1999, 99 J.T.S. 46; A & P General Contractors v. Asociación Caná, 110 D.P.R. 753, 762 (1981). Siendo una modalidad de cosa juzgada, comparte con ésta el propósito de evitar que en un pleito posterior se litiguen cuestiones que ya fueron, o que pudieron haber sido litigadas y adjudicadas en un pleito anterior. Worldwide Food Distributors, Inc. v. Alberic Colón Bermúdez y Otros, Op. del 30 de junio de 1993, 93 J.T.S. 114; Rodríguez Rodríguez v. Colberg Comas, Op. del 30 de junio de 1992, 92 J.T.S. 102. De este modo, se persigue poner fin a los litigios luego de haber sido adjudicados en *835 forma definitiva por los tribunales, garantizando de este modo la certidumbre, y seguridad de los derechos declarados por resolución judicial, para así evitar gastos adicionales al Estado y a los litigantes. Worldwide Food Distributors, Inc. v. Alberic Colón Bermúdez y Otros, supra.
Aplicando la antes discutida doctrina al presente, caso, resulta que el proceso de. expropiación por la parte demandada-apelada fue debidamente adjudicado y validado en la sentencia* que; resolvió definitivamente las controversias referentes al proceso de expropiación forzosa, por lo que tal determinación, advino final y firme;. La impugnación del proceso planteada por el demandante-apelante ante este foro* no puede ser traído nuevamente para su litigación, mucho menos en esta etapa del caso.
V
Por las razones antes expuestas, se confirma la sentencia emitida por el tribunal de instancia.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Arda Heana Oquendo Graulau
Secretaria General.
ESCOLIOS 2001DTA 35
1. Carta del 19 de agosto de 1987 del consultor extemo de la A.C., Ing. Vafiadis, al Director Ejecutivo/ de dicha agencia sobre la canalización del Río Piedras y la realización de los planos esquemáticos, para la PR-l y PR-83& dentro del proyecto PR-66; Deposiciones al Ing. Vafiadis y al Ing. Hernández Borges, Director del Area de Diseño de la AC, desde, eí 1990, acreditando que las consultas de afectación por proyectos nornalmente se le referían al Ing. Vafiadis^ lo cual no se hizo en este caso; carta de 27 de enero de 1988 del Director del Area de Diseño de la AC de aquel momento, Efrafe í. Mzarry, inquiréndole al Ing. Vafiadis si la intersección PR-l/PR-838 sería o no cerrada, carta de 10 de febrero de 1988 del Ing. Vafiadis al Director Ejecutivo de la AC advirtiendo sobre la posible canalización del Río Piedras cerca de la intersección PR-l/PR-838, la eliminación de negocios aledaños a los inmuebles de marras y posibles mejoras; a la PR-838. para permitir "movimientos adicionales" hacia la PR-l; Deposición al Ing. Hernández Borges donde éste expresa que ante la documentación disponible y de ser él la persona con tal obligación, no hubiese emitido la carta de 5 de abril de 198.8, sobre la no afectación de los inmuebles; y otros documentos.
2. En el caso de expropiación forzosa, Civil Núm. KEF90-0207 y 0208, el tribunal concedió a Llerena la suma de $87,316.28 por lo gastado para acondicionar el terreno, remoción de escombros, babote y relleno.