EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor S. Maldonado<br><br>Recurrido<br><br>vs.<br><br>Junta de Planificación<br><br>Peticionaria | Certiorari<br><br>2007 TSPR 87<br><br>171 DPR \_\_\_\_ |

Número del Caso: CC-2003-791

Fecha: 10 de mayo de 2007

Tribunal de Apelaciones:

      Región Judicial de San Juan Panel IV

Juez Ponente:

      Hon. Carlos Rodríguez Muñiz

Abogada de la Parte Peticionaria:

      Lcda. Aida del C. Silver Cintrón

Abogada de la Parte Recurrida:

      Lcda. Heidi Rodríguez

Materia: Solicitud de Revisión Judicial procedente de la Junta de Planificación.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor S. Maldonado

    Recurrido

        vs.

Junta de Planificación

    Peticionaria

CC-2003-791    CERTIORARI

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 10 de mayo de 2007

El 5 de septiembre de 2000, el Sr. Víctor S. Maldonado, por conducto del Ing. Manuel A. Novas, presentó ante la Junta de Planificación, en adelante, la Junta, una consulta de ubicación para el desarrollo de un parque industrial pesado de aproximadamente 45 cuerdas en el Barrio Cotto Norte del Municipio de Manatí, así como la posible enmienda al Mapa de Zonificación Especial de la Cuenca Hidrográfica de la Laguna Tortuguero.[1] El terreno dónde ubicaría el proyecto propuesto está clasificado como un Distrito LT-A1 (Laguna

_____

[1] Dicha solicitud recibió el número 2000-08-0804-JPU.

Tortuguero-Agrícola Mecanizable) y LT-B1 (Laguna Tortuguero-Bosques Interiores).

El proyecto propuesto fue sometido ante la consideración de diversas agencias gubernamentales entre las que se encontraban la Autoridad de Energía Eléctrica —en adelante, la AEE—; la Autoridad de Acueductos y Alcantarillados —en adelante, la AAA—; la Autoridad de Carreteras y Transportación —en adelante, la ACT—; la Compañía de Fomento Industrial —en adelante, la CFI—; el Instituto de Cultura Puertorriqueña —en adelante, el ICP—; el Departamento de Recursos Naturales y Ambientales —en adelante, el DRNA—; el Departamento de Agricultura —en adelante, el DA—; y el Municipio de Manatí.

Luego de evaluar el proyecto solicitado, tanto la AEE como la CFI y el DA indicaron que no tenían objeción a que la Junta de Planificación aprobara el proyecto. Por su parte, la AAA y la ACT condicionaron su recomendación favorable a que se realizaran diferentes mejoras a la infraestructura del lugar, mientras que el ICP y el DRNA solicitaron una evaluación arqueológica y un documento ambiental para poder emitir su opinión. Por último, el Municipio de Manatí endosó favorablemente el proyecto por entender que "era de suma importancia para el desarrollo económico del Municipio de Manatí".

El 25 de octubre de 2000, la Junta solicitó del señor Maldonado que sometiera varios documentos entre los que se encontraba una evaluación ambiental para celebrar una vista

pública. Así las cosas, el 13 de febrero de 2001, se celebró la mencionada vista, recibiéndose en la misma la oposición --mediante ponencia oral y escrita-- de parte del Instituto Ambiental COTICAM de Puerto Rico.[2]

Luego de varios trámites, entre los que se encuentra la réplica del Ing. Novas a la oposición de COTICAM, la Junta volvió a evaluar la consulta solicitada y le concedió término a las partes para que emitieran sus comentarios. Posteriormente, la oficial examinadora emitió su recomendación y la Junta decidió archivar sin perjuicio la consulta por treinta (30) días, hasta que la parte solicitante sometiera los documentos solicitados.

Mientras todo lo anterior ocurría, el 28 de octubre de 2000, entró en vigor el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero, el cual tiene entre sus objetivos establecer la política pública que ha de guiar el uso de los terrenos del área.

Así las cosas y tras el solicitante cumplir con la solicitud antes mencionada de la Junta, sobre producción de documentos, el 17 de enero de 2002, notificada el 25 de febrero del mismo año, la Junta emitió una resolución denegando la consulta de ubicación. En síntesis, la referida agencia resolvió que el proyecto propuesto no

---

[2] Los fundamentos ofrecidos por COTICAM para su oposición se basaron en consideraciones ambientales en cuanto a la ubicación del proyecto propuesto en la Cuenca Hidrográfica de la Laguna Tortuguero; las malas prácticas en el manejo y uso de pesticidas en el sector; obstrucción de las aguas pluviales; y en la existencia de más de 10 pozos cerrados en el área por contaminación.

cumplía con el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero de 28 de octubre de 2000 e iba en contra de la Ley Núm. 292 de 21 de agosto de 1999 conocida como la Ley para la Protección y Conservación de la Topografía Cárstica de Puerto Rico, 12 L.P.R.A. § 1151 et seq., y de otras políticas públicas establecidas.

Oportunamente, Maldonado presentó una solicitud de reconsideración ante la Junta la cual fue acogida el 2 de abril del mismo año. Transcurridos 90 días desde que la Junta acogió la moción de reconsideración sin que ésta se expresara ni concediera prórroga alguna, Maldonado acudió --mediante recurso de revisión administrativa-- ante el Tribunal de Apelaciones. Adujo, en síntesis, que la Junta erró al utilizar el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero de 28 de octubre de 2000 para denegar la consulta de ubicación solicitada y al determinar que el proyecto propuesto atenta contra los Objetivos y Políticas del Plan de Usos de Terrenos de Puerto Rico.

Tras analizar los argumentos de ambas partes, el foro apelativo intermedio, revocó la resolución recurrida y devolvió el caso para que la Junta, entre otras cosas, evaluara la consulta de ubicación propuesta a la luz del Reglamento de Zonificación Especial para la Cuenca Hidrográfica de la Laguna Tortuguero vigente a la fecha de su presentación. Además ordenó que, al evaluar la solicitud, se consideraran los objetivos 5.02, 5.03, 5.04,

5.05 y 5.06 del documento Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico y que se remitiera la evaluación ambiental preparada por el solicitante a la Junta de Calidad Ambiental.

Insatisfecha, la Junta de Planificación acudió —-mediante recurso de *certiorari*—- ante este Tribunal. Alega que procede revocar la sentencia emitida por el foro apelativo intermedio debido a que dicho foro incidió:

… al entender en el recurso de revisión instado cuando no tenía jurisdicción.

… al determinar que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna de Tortuguero, de 28 de octubre de 2000, no era de aplicación a la consulta de ubicación de auto [sic].

… al determinar que la Junta de Planificación, indistintamente de si ya tenía criterios suficientes para denegar la consulta, debía someter la EA [Evaluación Ambiental] a la consulta de la Junta de Calidad Ambiental.

… al determinar que la Junta de Planificación debía analizar otras disposiciones del documento de Objetivos y Políticas Públicas Plan de Terrenos a pesar de señalar que la Junta de Planificación había fundamentado su determinación en este aspecto.

Expedimos el recurso solicitado; contando con la posición de ambas partes y estando en posición de resolverlo, procedemos a así hacerlo.

I

Evaluamos, en primer término, el primer señalamiento de error en el cual se sostiene que el Tribunal de

Apelaciones carecía de jurisdicción para entender en el recurso.

La Junta aduce que el foro apelativo intermedio carecía de jurisdicción para atender el recurso ante su consideración por alegadamente haberse presentado de forma tardía. En apoyo a su contención, alega que el recurrido presentó el recurso ante el Tribunal de Apelaciones transcurridos los treinta días siguientes a los noventa días posteriores a la oportuna presentación de la moción de reconsideración que fue acogida para consideración por la Junta, ello en contravención con la Sección 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, mejor conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. § 2165. No tiene razón.

Como es conocido, las cuestiones de jurisdicción son de carácter privilegiado, por lo que un planteamiento de esa índole puede presentarse tanto ante el tribunal de primera instancia como en la fase apelativa del caso. Junta de Planificación v. Frente Unido Pro Defensa del Valle de Lajas, res. el 26 de agosto de 2005, 2005 T.S.P.R. 117; Morán Ríos v. Marti Bardisona, res. el 5 de agosto de 2005, 2005 T.S.P.R. 110. En otras palabras, los tribunales deben ser fieles guardianes de su jurisdicción, independientemente de que el asunto haya sido planteado anteriormente o no. Ibid.

La jurisdicción no se presume, toda vez que, previo a la consideración en los méritos de un recurso, o una vez

cuestionada su jurisdicción, es deber ministerial de todo tribunal evaluar si la posee pues ello incide directamente sobre el poder mismo para adjudicar una controversia. Carattini v. Collazo Systems, res. el 3 de enero de 2003, 2003 T.S.P.R. 1; Sociedad de Gananciales v. A.F.F., 108 D.P.R. 644 (1979). La ausencia de jurisdicción no es susceptible de ser subsanada, ni las partes pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal ni éste puede adjudicársela. Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991)

Los tribunales no tienen discreción para asumir jurisdicción donde no la hay. Por ello, cuando un tribunal dicta una sentencia sin tener jurisdicción sobre las partes o la materia, su decreto es uno jurídicamente inexistente o *ultra vires*. Empress Hotel, Inc. v. Acosta, 150 D.P.R. 208 (2000).

En cuanto al término para acudir ante el Tribunal de Apelaciones para solicitar la revisión de una resolución emitida por una agencia administrativa, la Sección 3.15 de la L.P.A.U., ante, dispone que:

> "La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso. Si se tomare alguna determinación en su

consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración. <u>Si la agencia acoge la moción de reconsideración pero deja de tomar alguna acción con relación a la moción dentro de los noventa (90) días de ésta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días</u> salvo que la agencia, por justa causa y dentro de esos noventa (90) días, prorrogue el término para resolver por un período que no excederá de treinta (30) días adicionales." (Énfasis nuestro).

Debemos destacar, a su vez, que el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, #6031 de 13 de octubre de 1999, contiene una disposición prácticamente idéntica a la antes transcrita Sección 3.15 de la L.P.A.U.[3]

---

[3] En lo pertinente, el inciso 9 del mencionado reglamento dispone lo siguiente:

"…

En la Resolución, se advertirá a la parte afectada de su derecho a solicitar una reconsideración de la determinación de la Junta, dentro del término de veinte (20) días a partir de la fecha del archivo en autos de la notificación. La Junta, dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión, comenzará a correr nuevamente, desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea le [sic] caso. Si se tomare alguna determinación en su consideración, el término de treinta (30) días para solicitar Revisión Judicial, comenzará a contarse, desde la fecha en que se archiva en autos una copia de la notificación de la Resolución de la Junta, resolviendo definitivamente, la solicitud de reconsideración, cuya resolución, deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes al [sic] a [sic]

(Continúa . . .)

Como podemos notar, ambas disposiciones establecen, en síntesis, que una vez la Junta --o una agencia administrativa-- acoge una oportuna moción de reconsideración, ésta tiene noventa días, contados a partir de la presentación de la referida moción, para resolverla. De lo contrario, la Junta perderá jurisdicción sobre el caso y el término de treinta días para acudir al Tribunal de Apelaciones para solicitar la revisión del dictamen comenzará a contar una vez venzan los noventa días antes mencionados. En otras palabras, el término para acudir en alzada vencerá transcurridos 120 días de la presentación de la moción de reconsideración, acogida y no resuelta por la Junta.[4]

En el caso ante nuestra consideración, la moción de reconsideración se presentó el 18 de marzo de 2002 y la Junta la acogió el 2 de abril de 2002. No obstante haberla acogido oportunamente, la Junta dejó transcurrir 90 días desde la fecha en que se presentó la moción de reconsideración sin emitir dictamen alguno. El 31 de julio de 2002, --135 días después de radicada la moción de reconsideración-- Maldonado instó un recurso de revisión

_____

radicación de dicha solicitud. Si la Junta, dejare de tomar alguna acción con relación a la solicitud de reconsideración dentro de los noventa (90) días de haber sido radicada una solicitud acogida para resolución, perderá jurisdicción sobre la misma y el término para solicitar Revisión Judicial, comenzará a contarse, a partir de la expiración de dicho término de noventa (90) días…" (Énfasis nuestro).

[4] Salvo que la Junta, por justa causa y oportunamente, extienda el término.

administrativa ante el Tribunal de Apelaciones. De lo anterior se desprende que el recurso antes mencionado ––*a priori*–– fue uno <u>tardío</u> por haberse presentado transcurridos los 120 días de la presentación de la moción de reconsideración.

<u>Ahora bien, nuestro análisis no termina aquí; ello en vista de que el recurrido Maldonado alega que las advertencias incluidas en la notificación de la resolución aquí recurrida fueron defectuosas.</u>

Como se sabe, la Sección 3.14 de la L.P.A.U. establece que toda orden o resolución emitida por una agencia <u>advertirá el derecho de solicitar reconsideración o revisión de la misma con expresión de los hechos correspondientes y que cumplido este requisito comenzarán a regir dichos términos</u>, 3 L.P.R.A. § 2164. Cónsono con dicho precepto, <u>hemos resuelto que el derecho a la notificación adecuada es parte del debido proceso de ley y que, por ello, la notificación defectuosa de una resolución no activa los términos para utilizar los mecanismos post-sentencia quedando los mismos sujetos a la doctrina de incuria</u>. Véase: <u>Liana Caro</u> v. <u>Cardona Rivera</u>, res. el 11 de febrero de 2003, 2003 T.S.P.R. 11; <u>Asoc. Vec. Altamesa Este</u> v. <u>Mun. San Juan</u>, 140 D.P.R. 24 (1996); <u>Rivera</u> v. <u>Departamento de Servicios Sociales</u>, 132 D.P.R. 240 (1992); <u>Aponte</u> v. <u>Secretario de Hacienda</u>, 125 D.P.R. 610 (1990).

Mediante la antes mencionada doctrina de incuria, se impide a una parte instar un recurso cuando por su dejadez

o negligencia, en conjunto con el transcurso del tiempo y otras circunstancias pertinentes, se causa perjuicio a la otra. IM Winner, Inc. v. Mun. de Guayanilla, 151 D.P.R. 30 (2000). En cuanto a ello, hemos reiterado que no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de desestimarse el recurso instado, tales como: 1) la justificación, si alguna, de la demora incurrida; 2) el perjuicio que esta última acarrea; y 3) el efecto sobre intereses privados o públicos involucrados. Ibid; Pérez Villanueva v. J.A.S.A.P., 139 D.P.R. 588 (1995).

En resumidas cuentas, los casos deberán ser examinados a la luz de sus hechos y circunstancias particulares, considerando además que "[s]obre todo es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la 'razón' y a la 'conciencia' para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales." Pueblo v. Valentín, 135 D.P.R. 245 (1994).

De una lectura de las advertencias hechas por la Junta al peticionario en la resolución recurrida, se desprende que las mismas no fueron del todo claras y podían --como en efecto lo hicieron-- causar confusión. Veamos.

Las mencionadas advertencias, establecen en primera instancia que:

"Si la Junta acoge la Solicitud de Reconsideración deberá resolver la misma dentro de los noventa (90) días siguientes a la radicación de dicha solicitud. El término de treinta (30) días para solicitar la Revisión Judicial comenzará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la Resolución de la Junta resolviendo definitivamente la Solicitud de Reconsideración, cuya resolución deberá ser emitida y archivada en autos." (Énfasis nuestro)

Sin embargo, más adelante indican lo siguiente:

"Si la Junta dejare de tomar alguna acción con relación a la Solicitud de Reconsideración dentro de los noventa (90) días de haber sido acogida bajo estudio, perderá jurisdicción sobre la misma y el término para solicitar la Revisión Judicial empezará a contarse a partir de la expiración de dicho término de noventa (90) días, salvo que la Junta, por justa causa y dentro de esos noventa (90) días prorrogue el término para resolver por un periodo que no excederá de treinta (30) días adicionales." (Énfasis nuestro).

Como se puede apreciar, dicha advertencia resulta contradictoria al expresar, por un lado, que el término de 90 días que tiene la Junta para resolver una moción de reconsideración oportunamente presentada y acogida comenzará a decursar con la presentación de ésta y, por el otro, indicar que la Junta perderá jurisdicción para atender la moción de reconsideración transcurridos 90 días de haber sido acogida para estudio.

Ante dicha incongruencia --la cual es claramente contraria a la L.P.A.U. y al Reglamento de Procedimientos Adjudicativos de la Junta-- no nos queda otra alternativa que resolver que las advertencias incluidas en la resolución emitida por la Junta en el presente caso fueron defectuosas y que, por lo tanto, no activaron el término

para recurrir en alzada al Tribunal de Apelaciones. Como consecuencia de ello y según expresamos anteriormente, la tardanza en presentar el recurso ante el foro apelativo intermedio debe analizarse conforme la doctrina de incuria.

De un análisis cuidadoso del expediente ante nuestra consideración, se desprende que el recurrido Maldonado actuó conforme a uno de los supuestos incluidos en la advertencia que se incluyó en la resolución que le fue notificada. Asimismo, éste no se cruzó de brazos ni desplegó conducta demostrativa de dejadez o negligencia al presentar el recurso de revisión administrativa ante el Tribunal de Apelaciones 15 días después de vencido el término que disponen tanto la Ley de Procedimiento Administrativo Uniforme como el Reglamento de Procedimientos Adjudicativos de la Junta. Finalmente, resulta pertinente destacar que la tardanza incurrida por el peticionario no fue excesiva y que la Junta no ha alegado perjuicio alguno por ella o para algún interés público o privado que amerite desestimar el caso. Por el contrario, somos del criterio que el presente caso contiene controversias de alto interés público las cuales ameritan que se atiendan en los méritos.

En vista de lo antes expuesto, resolvemos que con relación al recurso presentado por el recurrido Maldonado ante el Tribunal de Apelaciones, el aludido foro tenía jurisdicción para atenderlo.

II

Como es sabido, la Constitución del Estado Libre Asociado de Puerto Rico establece en el Artículo VI, Sección 19, 1 L.P.R.A., que "será política pública del Estado Libre Asociado la más eficaz conservación de sus recursos naturales, así como el mayor desarrollo y aprovechamiento de los mismos para el beneficio general de la comunidad". Véase además, Misión Ind., P.R., v. J.C.A., 145 D.P.R. 908 (1998); Paoli Méndez v. Rodríguez, 138 D.P:R. 449 (1995).

Conforme dicho mandato constitucional, en el pasado hemos expresado que "ha sido política pública del Gobierno del Estado Libre Asociado de Puerto Rico dirigir el proceso de planificación de nuestra isla hacia un desarrollo integral sostenible asegurando el juicioso uso de las tierras y fomentando la conservación de los recursos naturales para el disfrute y beneficio de todos." A.R.P.E., et als. v. Rivera Morales, res. el 8 de mayo de 2003, 2003 T.S.P.R. 75, citando al documento Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, 23 R.P.R. §§ 650.821 et seq.

Siguiendo la política pública antes mencionada, la Asamblea Legislativa aprobó la Ley Sobre Política Pública Ambiental, Ley Núm. 416 de 22 de septiembre de 2004, la cual derogó la Ley Sobre Política Pública Ambiental anterior, Ley Núm 9 de 18 de junio de 1970. Entre los fines que tuvo la Legislatura para aprobar la mencionada ley

están, entre otros, los siguientes: 1) establecer una política pública que estimule una deseable y conveniente armonía entre el hombre y su medio ambiente; 2) fomentar los esfuerzos que impedirían o eliminarían daños al ambiente y la biosfera y estimular la salud y el bienestar del hombre; 3) enriquecer la comprensión de los sistemas ecológicos y fuentes naturales importantes para Puerto Rico.[5]

La Ley Núm. 416 --así como su predecesora, la Ley Núm. 9 antes mencionada-- dispone a su vez, en su Artículo 4, que todos los departamentos, agencias, municipios, corporaciones e instrumentalidades públicas del Estado Libre Asociado de Puerto Rico y sus subdivisiones políticas deberán, al máximo grado posible, interpretar, aplicar y administrar todas las leyes y cuerpos reglamentarios vigentes y los que en lo futuro se aprueben en estricta conformidad con la política pública enunciada en dicha Ley.

Asimismo, la Asamblea Legislativa aprobó la Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. §§ 62 et seq. Esta Ley se aprobó con el propósito general de "guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en

---

[5] Es menester desatacar que los fines que tuvo la Legislatura para aprobar ambas leyes son idénticos.

la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda desarrollarse integralmente." Art. 4 Ley Núm. 75, 23 L.P.R.A. § 62c; véase, Hernández v. Centro Unido de Detallistas, res. el 10 de agosto de 2006, 2006 T.S.P.R. 131.

Entre las facultades que la Legislatura le otorgó a la Junta de Planificación, para que pudiera lograr los propósitos propuestos, están el adoptar y aprobar los reglamentos que autoriza la Ley; el Reglamento de Zonificación y el Reglamento de Lotificación; y cualesquiera otros necesarios o que le autorice promulgar cualquier otra ley. 23 L.P.R.A. § 62j(4).

Por otro lado y en lo relativo a la zona cárstica de Puerto Rico, el 21 de agosto de 1999 se aprobó la Ley para la Protección y Conservación de la Fisiografía Cárstica de Puerto Rico.[6] En esta Ley se expresó que "es política pública del Estado Libre Asociado de Puerto Rico proteger, conservar y manejar para beneficio de ésta y futuras

---

[6] Ley Núm. 292 de 21 de agosto de 1999, 12 L.P.R.A. §§ 1151 et seq.

generaciones la fisiografía cárstica de Puerto Rico". De igual forma, en la mencionada Ley se establece que:

"El Secretario del Departamento de Recursos Naturales y Ambientales ordenará a los Negociados de Geología, Recursos de Agua, Programa de Zona Costanera, Patrimonio Natural y al Negociado de Pesca y Vida Silvestre que lleven a cabo un estudio que defina las áreas que, debido a su importancia y función ecológica, hidrológica y ecosistémica, no puedan ser utilizados bajo ningún concepto para la extracción de materiales de la corteza terrestre con propósitos comerciales, ni para explotaciones comerciales. Dicho estudio ofrecerá alternativas para que las actividades antes señaladas puedan llevarse a cabo bajo condiciones apropiadas en otras áreas de la zona cárstica. Las recomendaciones de este estudio se incorporarán en el Reglamento para la Extracción de Materiales de la Corteza Terrestre y en los reglamentos de la Junta de Planificación para zonificar aquellas áreas de la zona cárstica que deban conservarse." (Énfasis nuestro.) 12 L.P.R.A. § 1153.

Conforme a la antes mencionada Ley, el 28 de octubre de 2000, se aprobó el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero y el Mapa de Zonificación Especial, el cual derogó el Reglamento de la Cuenca Hidrográfica de la Laguna Tortuguero de 1978. Dicho Plan y Reglamento establece una zonificación especial para la cuenca hidrográfica de la Laguna Tortuguero, la cual determina el uso y la intensidad básica de las actividades actuales y propuestas en el área. Además, dispone que todo proyecto radicado ante la Junta de Planificación y la Administración de Reglamentos y Permisos deberá cumplir con lo allí establecido y con la Ley Sobre Política Pública Ambiental, ante. Finalmente y en lo pertinente, se indica,

que <u>no se deberán aprobar pozos de inyección y que "no se aprobarán otros proyectos industriales en la Cuenca</u>."

Como se puede apreciar de lo antes mencionado, en Puerto Rico --<u>por mandato constitucional</u>-- existe una clara política pública dirigida a proteger nuestros recursos naturales. Asimismo, se desprende que dicha política está plasmada tanto en un sinnúmero de leyes de carácter general como de carácter específico y que todo organismo adjudicativo tiene el deber ineludible de utilizarla a la hora de tomar decisiones que puedan afectar el medio ambiente.

Por otro lado, no podemos pasar por alto que desde el 1979 se han aprobado reglamentos dirigidos a proteger la sensitiva zona cárstica de Puerto Rico. Dicho interés de conservación, es tan importante que en el 1999 transcendió el área reglamentaria para enmarcarse en una ley independiente la cual penaliza con multas administrativas a las personas que realicen ciertas actividades en el área sin el permiso del Secretario del Departamento de Recursos Naturales y Ambientales de Puerto Rico.[7]

Expuesta la política pública ambiental en Puerto Rico y el interés gubernamental particular de proteger el área cárstica, nos corresponde atender las controversias específicas surgidas entre las partes.

---

[7] Entre las actividades prohibidas están: la extracción, excavación y remoción de roca caliza con propósitos comerciales o de nivelación de terrenos. 12 L.P.R.A § 1152.

A.

En su segundo señalamiento de error, la Junta arguye que el foro apelativo intermedio erró al resolver que para analizar el proyecto propuesto la Junta no podía utilizar el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero aprobado días después de haberse presentado la consulta de ubicación. Por su parte, el recurrido Maldonado alega que el Tribunal de Apelaciones actuó correctamente al así resolver, ya que utilizar el nuevo reglamento --el cual contiene una prohibición de aprobar nuevos proyectos industriales en la cuenca y de permitir pozos de inyección-- para analizar su solicitud implicaría la aplicación retroactiva de un reglamento inexistente a la fecha de la presentación de la misma.

Evaluadas dichas alegaciones, consideramos que la controversia principal surgida entre las partes puede resumirse de la siguiente manera: ¿si un Reglamento de Zonificación aprobado con posterioridad a la presentación de una solicitud de consulta de ubicación puede utilizarse como fundamento para denegar la consulta? Veamos.

La controversia antes expresada no ha sido atendida, ni resuelta, anteriormente por este Tribunal. En vista de ello --y con fines meramente ilustrativos-- examinamos la jurisprudencia norteamericana sobre la materia y los comentarios al respecto de diversos tratadistas. El mencionado análisis revela que en la mayoría de los Estados de la nación Americana la presentación de una solicitud de

un permiso, antes de entrar en vigor una nueva reglamentación de zonificación, no concede un derecho a obtener el mismo para algún uso prohibido por la nueva ordenanza.[8]

> Varias jurisdicciones han requerido, como condición a la aplicación de la referida regla general, que la nueva regulación ya esté en proceso de aprobación ("pending") al solicitarse el permiso en controversia. Urey v. Zoning Hearing Bd. Of City Hermitage, 806 A.2d 502 (2002).

En cuanto al concepto de "legally pending", se ha resuelto que un nuevo reglamento se considerará "pendiente de aprobación" cuando el cuerpo rector ha decidido revisar un esquema de zonificación en particular y ha iniciado un procedimiento de reglamentación, anunciando a la ciudadanía sus intenciones de celebrar vistas públicas sobre el mismo. Sherman v. Reavis 257 S.E.2d 735, 737 (1979);[9] Continental Southeastern Group v. City of Folly Beach, 348 S.E.2d 837 (1986).

En resumidas cuentas, la doctrina antes expuesta --conocida en las jurisdicción norteamericana como "the

---

[8] "Ordinarily an application for a permit made before a zoning ordinance becomes effective gives in itself no right to a use excluded by the ordinance". Eugene McQuilin, The Law of Municipal Corporations, Third Ed. (2000), Vol. 8, pág. 567, § 25.155. Véase, además, Coral Springs St. Sys. v. City of Sunrise, 371 F.3d 1320 (11th Cir. 2004); County of Santa Fe v. Public Serv. Co., 311 F.3d 1031 (10th Cir. 2002); Stratos v. Town of Ravenel, 376 S.E.2d 783 (S.C. App. 1989).

[9] "An ordinance is legally pending when the governing body has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning."

pending ordinance doctrine"-- permite que un permiso de construcción sea denegado utilizando como fundamento un reglamento aprobado posteriormente pero que estuviera en proceso formal de aprobación --"pending"-- antes de la presentación de la petición. A su vez, un reglamento en proceso de aprobación es uno que haya comenzado a evaluarse, ya sea mediante la publicación de avisos o la celebración de vistas públicas, antes de la fecha de presentación de la solicitud. Lo primordial para determinar si la reglamentación es una pendiente es evaluar si el proceso de aprobación de la misma ya había comenzado oficialmente y si se habían hecho gestiones tendentes a informar al pueblo sobre el particular.

Un fundamento adicional en apoyo a la aplicación de la doctrina de la "reglamentación pendiente" --"pending ordinance doctrine"-- en nuestra jurisdicción, es que aquí, al igual que en los Estados en donde mayoritariamente se ha adoptado la misma, una solicitud de permiso no concede un derecho adquirido para su aprobación. En cuanto a ello, en el pasado hemos expresado que en materia de permisos de construcción la persona adquiere un derecho --que impide su derogación por una ley posterior-- una vez el mismo se haya expedido y ésta actuare conforme el mismo e incurriere en gastos sustanciales. Fraternidad Phi Delta Pi v. Junta de Planificación, 76 D.P.R. 585 (1954), citando a Yokley, Zoning Law and Practice, segunda ed. pág. 234.

Así pues, un solicitante <u>no</u> adquiere un derecho a obtener una consulta de ubicación por el mero hecho de presentar su solicitud en un momento en el que la reglamentación vigente permite la misma. Por ende, si a la fecha de la presentación de la solicitud existe una nueva reglamentación pendiente de aprobación, <u>y la misma se aprueba antes de que la solicitud se resuelva</u>, dicha reglamentación puede ser utilizada a la hora de conceder o denegar la solicitud de consulta. Claro está, distinto es el caso en el que la consulta de ubicación haya sido concedida antes de entrar en vigor la nueva reglamentación, toda vez que en ese momento el solicitante ya tiene un derecho adquirido del cual no puede ser despojado sin un debido proceso de ley.

Contamos con una "Opinión" del Secretario de Justicia de Puerto Rico, emitida en el año 1970, sobre una controversia similar a la hoy ante nuestra consideración, en la cual se "adoptó" la misma posición que hoy mayoritariamente prevalece en la jurisdicción norteamericana sobre este punto.[10] Aun cuando las "opiniones" emitidas por el Secretario de Justicia de Puerto Rico <u>no</u> obligan a los tribunales[11], señalamos la misma por el valor persuasivo que ésta pueda tener. Es de

---

[10] Opinión Número 30 de 1970 del Secretario de Justicia de Puerto Rico.

[11] Véase: *In re* Secretario de Justicia, 118 D.P.R. 827, 855 (1987).

notar que en dicha ocasión, el mencionado funcionario determinó que un Oficial de Permisos de la Junta de Planificación podía utilizar el Reglamento Núm. 4 del 7 de febrero de 1970 para evaluar las solicitudes de permisos que estaban sin resolver al entrar el mismo en vigor.[12]

En vista de todo lo anteriormente expuesto, y del alto interés público que ostenta la protección del medio ambiente y de los recursos naturales en nuestra jurisdicción, resolvemos que la normativa antes mencionada es una que debe ser adoptada en nuestra jurisdicción. Al respecto, nos hacemos eco de las siguientes expresiones hechas en Sherman v. Reavis, ante, a los efectos de que:

> "It would be utterly illogical to hold that, after a zoning commission had prepared a comprehensive zoning ordinance or an amendment thereto, which was on file and open to public inspection and upon which public hearings had been held, and while the ordinance was under consideration, any person could by merely filing an application compel the municipality to issue a permit which would allow him to establish a use

---

[12] De particular pertinencia a nuestra controversia resultan las expresiones vertidas en el escolio número 2 de la mencionada "opinión" del Secretario de Justicia, en el cual se expresa:

> "According to some authorities, where, after the making of an application for a permit but before a decision thereon, the regulations applicable to the subject matter of the permit sought are changed, the application is governed by the regulations as changed, and a municipality may properly refuse a building permit for a land use repugnant to a pending and later-enacted zoning ordinance even though the application for the permit is made when the intended use conforms to existing regulations, *provided that no permit has been issued and relied on in good faith to the substantial detriment of the holder of the permit*." Citando a 101 C.J.S., Zoning, 221.

which he either <u>knew or could have known</u> would be forbidden by the proposed ordinance, and by so doing nullify the entire work of the municipality in endeavoring to carry out the purpose for which the zoning law was enacted."

Una vez resuelto lo anterior, corresponde determinar si en el presente caso el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero de 28 de octubre de 2000, estaba <u>pendiente de aprobación</u> a la fecha de la presentación de la consulta de ubicación en controversia. De contestar esa interrogante en la afirmativa, debemos resolver si, al tenor de las disposiciones incluidas en el mencionado Plan y Reglamento, la Junta actuó correctamente al denegar la consulta de ubicación solicitada. Veamos.

B.

De un análisis del expediente ante nuestra consideración, se desprende que la consulta de ubicación objeto de controversia fue presentada por el recurrido el 5 de septiembre de 2000 y que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero fue firmado por el entonces Gobernador de Puerto Rico, Hon. Pedro Rosselló González, el 28 de octubre de 2000, o sea que el referido Reglamento entró en vigor 43 días después de la presentación de la consulta de ubicación en controversia. Asimismo, del propio documento se desprende que el 23 de noviembre de 1999 --casi diez meses antes de la presentación de la consulta de ubicación-- la Junta de Planificación celebró vistas públicas para ofrecerle la

oportunidad a los organismos gubernamentales, los propietarios de terrenos y otros grupos de interés para participar y comentar el reglamento.

Al amparo de lo anterior, resulta forzoso concluir que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero de 28 de octubre de 2000, era un documento "pendiente de aprobación" al momento en que se presentó por el recurrido Maldonado la consulta de ubicación. Resulta obvio, que la Junta de Planificación, tenía intenciones de prepara dicho plan y reglamento y había comenzado el proceso de aprobación mucho antes de que el recurrido solicitara permiso para establecer un parque industrial pesado en terrenos ubicados en la cuenca hidrográfica de la laguna Tortuguero. Tan es así que, el 23 de noviembre de 1999, la Junta presentó el referido documento en una vista pública a la cual asistieron organismos gubernamentales, propietarios de terrenos y otras personas con interés.

Visto lo anterior, somos del criterio que conforme a la doctrina antes mencionada de "pendiente de aprobación" —-la cual hoy adoptamos en nuestra jurisdicción—- la Junta podía utilizar el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero de 28 de octubre de 2000 para evaluar la consulta de ubicación solicitada por el recurrido. Así pues, corresponde determinar si procedía la denegación de la misma a la luz de las normas establecidas en dicho documento.

C.

Ya mencionamos que el recurrido Maldonado solicitó una consulta de ubicación con el propósito de construir un parque industrial pesado en un terreno de aproximadamente 45 cuerdas, más tres o cuatro cuerdas de una finca a segregarse, sito en el Barrio Cotto Norte de Manatí y que dicho terreno ubica en los predios protegidos tanto por el antiguo como por el nuevo Reglamento Especial de la Cuenca Hidrográfica de la Laguna Tortuguero.

El referido Reglamento clasifica los terrenos donde se propone la ubicación del proyecto solicitado como LT-A1 y LT-B1 --esencialmente la misma categoría que el anterior reglamento--. Específicamente, para los terrenos ubicados en el Distrito LT-A1 dicho Reglamento establece los siguientes usos: 1) agrícola tales como siembra de productos, siempre y cuando se utilicen fertilizantes y plaguicidas orgánicos que no contaminen; 2) usos y edificios accesorios estrechamente relacionados o complementarios a los cultivos llevado a cabo como uso principal en la finca; 3) vivienda para una familia. Por otro lado, para los terrenos ubicados en el distrito LT-B1 se disponen los siguientes usos: 1) agrícola; 2) edificios de usos accesorios a los usos principales; 3) venta de productos cosechados en la finca incluyendo la madera; 3) talleres de artesanía; 4) casa de una o dos familias con ciertos requisitos.

De igual forma, debemos destacar que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero de 28 de octubre de 2000, dispone entre las estrategias para los usos industriales que "no se aprobarán otros proyectos industriales en la Cuenca". Además, establece que para la protección de los sistemas naturales como los sumideros se prohibirá "la construcción de pozos de inyección que se usan para disponer de las aguas pluviales, [ya que] éstos alteran el equilibrio hidrogeológico subterráneo."

Visto lo anterior, resulta meridianamente claro que el proyecto propuesto por el recurrido no está entre los usos permitidos por el Plan y Reglamento Especial antes mencionado. Peor aún, la aprobación de parques industriales, como el que el recurrido pretende establecer, está expresamente prohibida en dicho documento. Así lo dejó establecido la Junta en su resolución y así lo observamos nosotros de un análisis del Reglamento. Además, de la resolución de la Junta de Planificación se desprende que el proyecto solicitado propone que se utilicen dos pozos de inyección (Clase V y Tipo B5) para las aguas de escorrentías, lo que también está expresamente prohibido por el aludido documento.

Además de los anteriores fundamentos, la Junta de Planificación también resolvió que el proyecto propuesto atenta contra varios objetivos y políticas públicas del

Plan de Usos de Terrenos de Puerto Rico.[13] No discutiremos los mismos ya que consideramos que, con los fundamentos iniciales --relativos a la prohibición de aprobar nuevos parques industriales en el área y nuevos pozos de inyección--, era suficiente para denegar el proyecto solicitado.

---

[13] Específicamente utilizó la Política Pública 30.02 y 31.00 las cuales obligan a:

"Política Pública 30.02: Controlar las actividades de desarrollo de terrenos, la construcción y las lotificaciones que pudieran afectar adversamente la calidad de las aguas, en particular en las áreas de recarga de los acuíferos y en las cuencas inmediatas de los lagos y embalses, incluyendo entre otros, actividades tales como la pavimentación excesiva que aumenta el caudal de aguas de escorrentía, el uso indiscriminado de fertilizantes y plaguicidas que desmerecen la calidad de nuestros cuerpos de agua, el desmonte, la remoción de la capa vegetal y los movimientos de tierra que provocan la erosión y sedimentación."

"Política Pública 31.00: Propiciar la protección de áreas con suelos kársticos que por las formaciones calcáreas y por sus características hidrogeológicas proveen beneficios para los acuíferos, protegen las aguas superficiales y mantienen la integridad ecológica de los sistemas naturales.

Estimular la conservación de mogotes de naturales kárstica.

Mantener la integridad natural de los sistemas de drenaje en suelos kársticos, desestimulando las alteraciones en las áreas de carga y recarga de los cuerpos de aguas subterráneas y de las cuencas hidrográficas de aguas superficiales.

Evitar las hidromodificaciones en áreas kársticas de vital importancia.

Evitar las alteraciones del equilibrio ecológico e hidrogeológico en aquellas áreas kársticas donde los estudios edafológicos y geológicos recomiendan la protección de dichas funciones."

Antes de finalizar, debemos reiterar que es harto conocido que los tribunales debemos deferencia a las determinaciones de las agencias administrativas, máxime cuando en la controversia planteada están envueltos asuntos relativos a sus áreas de especialización o pericia. También hemos resuelto que dicha deferencia solamente cederá cuando la determinación no está basada en evidencia sustancial, cuando se haya errado en la aplicación de la ley, o cuando ha mediado una actuación irrazonable o ilegal[14]; situaciones que, como vimos, no se dan en el presente caso.

Asimismo, debemos recordar que la zona cárstica contiene uno de los mayores acuíferos freáticos de Puerto Rico, además de ser una de incomparable valor escénico, natural, cultural e histórico haciendo de ella un área con un gran potencial turístico ecológico y de investigación científica,[15] por lo que consideramos le es aplicable en todo su vigor la política pública del Gobierno de Puerto Rico dirigida a lograr un desarrollo integral sostenible asegurando el juicioso uso de las tierras y fomentando la conservación de los recursos naturales para el disfrute y beneficio de todos. Véase: A.R.P.E., *et als.* v. Rivera Morales, ante.

---

[14] Otero Mercado, *et al.* v. Toyota de Puerto Rico Corp., *et al.*, res. el 3 de febrero de 2005, 2005 T.S.P.R. 8; Reyes Salcedo v. Policía, 143 D.P.R. 85, 94 (1997); Rivera Santiago v. Secretario de Hacienda, 119 D.P.R. 265 (1987).

[15] Véase la Orden Ejecutiva del Gobernador aprobando el Plan y Reglamento Especial para la Cuenca hidrográfica de la Laguna Tortuguero, 2000-OE-56.

Por los fundamentos antes expresados, resolvemos que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero, aprobado el 28 de octubre de 2000, era aplicable a la consulta de ubicación presentada por el recurrido y que a la luz de las disposiciones del mismo procedía la denegación de la misma.[16] En consecuencia erró el Tribunal de Apelaciones al ordenar la devolución del caso ante la Junta de Planificación para la celebración de procedimientos adicionales.

III

En mérito de lo antes expuesto, procede revocar la Sentencia emitida por el Tribunal de Apelaciones el 29 de agosto de 2003 y, en consecuencia, restablecer la resolución de la Junta de Planificación emitida el 17 de enero de 2002, la cual denegó la consulta de ubicación Número 2000-08-0804-JPU.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[16] En vista del resultado al que hemos llegado, resulta innecesario discutir los restantes señalamientos de error de la peticionaria.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor S. Maldonado

    Recurrido

       vs.

Junta de Planificación

    Peticionaria

CC-2003-791     CERTIORARI

SENTENCIA

San Juan, Puerto Rico, a 10 de mayo de 2007

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones el 29 de agosto de 2003 y, en consecuencia, se restablece la resolución de la Junta de Planificación emitida el 17 de enero de 2002, la cual denegó la consulta de ubicación Número 2000-08-0804-JPU.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta emitió Opinión Concurrente y Disidente a la cual se unió la Juez Asociada señora Rodríguez Rodríguez. El Juez Asociado señor Fuster Berlingeri no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Víctor S. Maldonado
    Recurrido

*CERTIORARI*

      v.                 CC-2003-791

Junta de Planificación
    Peticionaria

Opinión Concurrente y Disidente emitida por la Jueza Asociada SEÑORA FIOL MATTA a la cual se une la Jueza Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 10 de mayo de 2007.

Concurro con la decisión de este Tribunal respecto a que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero era aplicable a la consulta de ubicación presentada por el recurrido y que a la luz de las disposiciones del reglamento procedía denegar la consulta. Sin embargo, entiendo que no debemos adoptar la norma de la "reglamentación pendiente" en nuestra jurisdicción, por la limitación que ello supone a las facultades delegadas a la Junta de Planificación para la planificación integral y armoniosa del desarrollo de nuestro país.

I

La controversia planteada en este caso, sobre si la Junta de Planificación debió utilizar un reglamento de zonificación aprobado con posterioridad a la presentación de una consulta de ubicación como fundamento para denegar la misma es, en esencia, una controversia sobre la aplicación retroactiva de dicho reglamento que debemos atender conforme a la doctrina civilista sobre la irretroactividad de las leyes.[17]

El artículo 3 del Código Civil de Puerto Rico establece el principio de irretroactividad de las leyes:

> Las leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario.
> En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior. 31 L.P.R.A. sec. 3.

En ocasiones anteriores, hemos señalado que este principio no es una norma absoluta y que deberá ser aplicado como una regla general de interpretación de estatutos. Por esta razón, una ley podrá tener efecto retroactivo si la intención legislativa así lo dispone de forma expresa o tácita. Warner Lambert Co. v. Tribunal Superior, 101 D.P.R.

---

[17] El principio de la irretroactividad de las leyes se extiende a la aplicación de los reglamentos administrativos: "La palabra Leyes utilizada por el artículo 3 ha de entenderse en sentido amplio, por lo que el principio de irretroactividad deberá aplicarse a las demás normas jurídicas; por ejemplo, a las disposiciones administrativas." Francisco Bonet Ramón, Compendio de Derecho Civil, Madrid, Editorial Revista de Derecho Privado, 1959, Tomo I, pág. 203.
En la jurisprudencia estadounidense también se han tratado estas controversias como regidas por el efecto retroactivo de los reglamentos de zonificación. Véase, Roland F. Chase, J.D., Retroactive effect of zoning regulation, in absence of saving clause, on pending application for building permit, 50 A.L.R.3d 596 (1973).

378, 384-388 (1973). Véase además, <u>Vélez Reboyras v. Secretario de Justicia</u>, 115 D.P.R. 533, 542 (1984), <u>Consejo de Titulares del Condominio New San Juan v. Williams Hospitalito Group</u>, 2006 T.S.P.R. 94. Ahora bien, el artículo 3 del Código Civil, limita el efecto retroactivo de una ley para que no se perjudiquen los derechos adquiridos al amparo de una ley anterior. Por tanto, para determinar si el efecto retroactivo de una ley es válido se debe evaluar si dicho efecto surge de forma expresa o tácita, según la intención legislativa y si éste afecta derechos adquiridos al amparo de una ley anterior.

En el campo del Derecho Administrativo tenemos que tener en cuenta que el poder de reglamentación de las agencias proviene de la facultad que les delega la rama legislativa. Por consiguiente, al aplicar el principio de irretroactividad de las leyes a un reglamento es necesario determinar, en primer lugar, si el reglamento tiene efecto retroactivo; en segundo lugar, si la agencia que lo adopta tiene la facultad delegada de otorgarle efecto retroactivo a ese reglamento; y, en tercer lugar, si el efecto retroactivo del reglamento es válido. El reglamento tendrá efecto retroactivo si afecta actos jurídicos realizados, situaciones jurídicas nacidas o hechos acaecidos antes de su vigencia. L. Díez-Picazo y A. Gullón Ballesteros, <u>Sistema de Derecho Civil</u>, 9na ed., Madrid, Editorial Tecnos, 1997, Volumen I, pág. 106.

La facultad de concederle efecto retroactivo a un reglamento puede ser delegada de forma expresa o tácita por la rama legislativa. Si no surge de forma expresa en la ley, entonces habrá que evaluar si según la intención legislativa y la naturaleza de la facultad a la que se le intenta dar efecto retroactivo, es razonable concluir que la delegación a la agencia fue tácita. La facultad tácitamente delegada debe ser necesaria para que la agencia pueda adelantar los propósitos de su ley habilitadora y debe estar dentro de los amplios poderes expresamente delegados por la Asamblea Legislativa. Caribe Communications, Inc. v. Puerto Rico Telephone Co., Inc., 2002 T.S.P.R. 83. Véase además, M & BS Inc. v. Departamento de Agricultura, 118 D.P.R. 319, 325-326 (1987).

Luego de determinar si la agencia tiene la facultad de atribuirle efecto retroactivo a un reglamento, se debe evaluar la validez de ese efecto retroactivo, tomando en consideración si éste surge de forma expresa o tácita del reglamento y si afecta derechos adquiridos al amparo de un reglamento anterior.

## II

Apliquemos el marco doctrinal explicado al caso que hoy nos ocupa. En este caso, la Junta de Planificación utilizó el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero como uno de los fundamentos para denegar la consulta de ubicación presentada por el recurrido antes de que dicho Plan estuviera vigente.

Evidentemente, el reglamento bajo análisis tiene efecto retroactivo ya que afecta un hecho acontecido antes de su vigencia.

La Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, delegó a la Junta de Planificación de Puerto Rico la facultad de crear Planes de Uso de Terrenos y Reglamentos de Zonificación, con el propósito de guiar el desarrollo integral de Puerto Rico. 23 L.P.R.A. sec. 62c,m,o. A base de la facultad delegada y de su conocimiento especializado, la Junta de Planificación ha adoptado Reglamentos de Zonificación en los cuales establece las normas esenciales sobre cómo y dónde deben ubicarse las actividades sociales y económicas de Puerto Rico.[18]

La facultad de zonificar es una facultad especializada. El objetivo de ésta es buscar la armonía y la planificación integrada entre los usos designados en los terrenos del país. Al adoptar o enmendar un reglamento de zonificación, la Junta de Planificación intenta evitar la aprobación de usos no conformes y contrarios a la política pública establecida en la nueva reglamentación. Por esto, de acuerdo a la propia naturaleza de esta facultad es razonable que la agencia pueda otorgarle efecto retroactivo a dichos reglamentos. Esta facultad es necesaria para que la agencia pueda ejercer efectivamente su función de zonificar.

---

[18] Introducción del Reglamento de Zonificación de Puerto Rico, Reglamento núm. 6211 de 5 de noviembre de 2000.

La facultad de concederle efecto retroactivo a los Reglamentos de Zonificación no surge de forma expresa en la Ley Orgánica de la Junta de Planificación. Sin embargo, dado que la intención legislativa es lograr el desarrollo integral del país, la facultad de darle efecto retroactivo a los Reglamentos de Zonificación resulta necesaria para que la Junta pueda adelantar el propósito de la ley. Por eso, es forzoso concluir que esta facultad le fue delegada tácitamente a la Junta dentro de su amplio poder de adoptar Reglamentos de Zonificación.

Una vez determinado que la Junta de Planificación tiene la facultad de otorgarle efecto retroactivo a los Reglamentos de Zonificación, corresponde evaluar la validez del efecto retroactivo del reglamento bajo análisis. Este reglamento, llamado el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero fue adoptado por la Junta de Planificación con el propósito de controlar los usos de los terrenos en esta cuenca y proteger, conservar y restaurar los sistemas naturales que la componen. En el capítulo V sobre Instrumentos de Implantación del reglamento, se dispone que la zonificación establecida en el mismo "determinará el uso y la intensidad básica de las **actividades actuales y propuestas** en el área estudiada". (Énfasis suplido) Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero, de 28 de octubre de 2000, Capítulo V (A)(1). Además, añade que todo **proyecto presentado** ante la Junta de Planificación y la

Administración de Reglamentos y Permisos deberá cumplir con lo establecido en el reglamento y que su vigencia será inmediata. Id.

Ante la evidente intención expresa de la Junta de aplicar retroactivamente este reglamento a las actividades propuestas o proyectos presentados en la agencia, debemos examinar la posibilidad de que el reglamento afecte derechos adquiridos al amparo de un reglamento anterior. En ese análisis no podemos olvidar que la mera solicitud de un permiso de construcción no confiere ningún derecho adquirido al solicitante. Fraternidad Phi Delta Pi v. Junta de Planificación, 76 D.P.R. 585, 591 (1954). Para que exista tal derecho es necesaria la previa aprobación del permiso por la agencia pertinente y que la persona que lo obtenga haya incurrido en gastos sustanciales actuando a base de dicho permiso. Al respecto hemos expresado lo siguiente:

> Efectivamente, la regla generalmente establecida, que ahora adoptamos, determina que una vez se haya expedido un permiso de construcción por un funcionario debidamente autorizado, y la persona que ha obtenido el permiso ha actuado a base de ese permiso y ha incurrido en gastos sustanciales, el derecho logrado en virtud de la construcción se convierte en un **derecho adquirido** que el gobierno no puede destruir en virtud de una revocación del permiso. Yokley, Zoning Law and Practice, segunda ed. pág. 234, et seq., sec. 100, y casos allí citados y discutidos." (Énfasis suplido) Fraternidad Phi Delta Pi v. Junta de Planificación, 76 D.P.R. 585, 591 (1954).

La presentación de una consulta de ubicación es el inicio de un proceso de evaluación por la Junta de Planificación para determinar si permitirá el uso propuesto

en un predio determinado.[19] En una consulta de ubicación el uso propuesto es, de por sí, un **uso no permitido** por la zonificación aplicable al predio determinado, dejando a la discreción de la agencia su consideración y posible autorización. Sección 3.03 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento 6031 del 12 de noviembre de 1999. Este proceso de evaluación no concluye sino hasta la aprobación o denegación final del permiso. Debido a que el solo acto de presentar una consulta de ubicación no supone, ni garantiza, la aprobación del permiso, tampoco puede conceder un derecho bajo la reglamentación vigente al momento de presentarse la consulta.

En este caso, el recurrido presentó una consulta de ubicación el 5 de septiembre de 2000. El Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero entró en vigencia el 28 de octubre de 2000. Finalmente, la consulta de ubicación del recurrido fue denegada el 17 de enero de 2002, tomando en consideración el reglamento

---

[19] La sección 2.00 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación define una consulta de ubicación, en lo pertinente, como "el procedimiento ante la Junta de Planificación, para que evalúe, pase juicio y tome la determinación que estime pertinente, sobre propuestos usos de terrenos que **no son permitidos ministerialmente** por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren por la Junta de Planificación." (Énfasis suplido) Sección 2.00 (7) del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento 6031 del 12 de noviembre de 1999.

aplicable a la Cuenca Hidrográfica de la Laguna Tortuguero hacía más de un año.

Según el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, al aprobar o denegar una consulta de ubicación la Junta debe tomar en consideración, entre otras cosas, los Reglamentos de Zonificación.[20] Dado que el efecto retroactivo del reglamento en este caso no afectó un derecho adquirido al amparo del reglamento anterior, estamos ante un efecto retroactivo válido y la Junta de Planificación aplicó correctamente el reglamento bajo análisis al denegar la consulta de ubicación presentada por el recurrido.[21]

La regla general en las jurisdicciones estatales de los Estados Unidos apoya esta conclusión. La mayor parte de

---

[20] Sección 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento 6031 del 12 de noviembre de 1999.

[21] A idéntica conclusión llegó la Opinión Número 30, de 1970 del Secretario de Justicia, la cual reconoce que un reglamento puede tener efecto retroactivo sobre la solicitud de un permiso, aunque de una forma más amplia, ya que no requiere analizar la facultad delegada a la agencia, ni la validez del efecto retroactivo del reglamento. Según la opinión:

> Como regla general, una mera solicitud de un permiso no crea un derecho a favor del peticionario; por lo tanto, si hay un cambio en las condiciones requeridas para la expedición del permiso, antes de emitirse decisión sobre una solicitud pendiente, entiendo que tal solicitud debe basarse en las disposiciones en vigor en este momento. No aplica la anterior regla, sin embargo, cuando el solicitante ha actuado de buena fe basándose en algún tipo de autorización. Op. Sec. Just. Núm. 30, 1970.

estas jurisdicciones han adoptado, como norma general y bajo el contexto de las ordenanzas municipales de zonificación, que la solicitud de un permiso de construcción presentada antes de que una ordenanza de zonificación entre en vigor, no otorga ningún derecho sobre un uso prohibido por dicha ordenanza. La norma acogida añade que los derechos de las partes deben ser determinados a base de la reglamentación vigente al momento en que se ejerce el uso permitido, en vez de la reglamentación vigente al momento en que se presenta la solicitud del permiso. Véase, Eugene McQuilin, The Law of Municipal Corporations, Third Ed. (2000), Vol. 8, pág. 567-568, sec. 25.155.[22] Véase además, Metro. Dev. Comm'n of Marion County v. Pinnacle Media, LLC, 836 E.N.2d 422, 428 (2006), Arthur C. Fillmore v. Town of Sanbornton, 319 A.2d 103, 104-105 (1974).

Debemos señalar que la regla general en las jurisdicciones estadounidenses es más amplia que la aquí propuesta, ya que no requiere evaluar la facultad delegada a la agencia, ni la validez del efecto retroactivo de la nueva ordenanza; más bien reconoce la retroactividad como la regla

---

[22] "In most jurisdictions it is clear that, as a general rule, the denial of an application for a building permit may be based on a zoning regulation enacted or becoming effective after the application was made, or to state the rule conversely, a zoning regulation may be retroactively applied to deny an application for a building permit, even though the permit could have been lawfully issued at the time of application." Roland F. Chase, J.D., Retroactive effect of zoning regulation, in absence of saving clause, on pending application for building permit, 50 A.L.R.3d 596 sec. 3 (1973).

general: "As a general rule, a newly enacted zoning ordinance will apply **retroactively** to block a building permit applied for but not granted before the effective date of the new ordinance" (Énfasis suplido) Yokley, Zoning Law and Practice, cuarta ed., volumen 2, sec. 14-7, pág. 14-29.

                                III

La opinión mayoritaria propone adoptar en nuestra jurisdicción, no la norma general antes explicada, sino la norma de la "reglamentación pendiente" desarrollada en algunas jurisdicciones de los Estados Unidos. Según esta norma, si se aprueba un reglamento después de haberse presentado una solicitud de permiso, este nuevo reglamento se podrá aplicar a lo solicitado solamente si estaba pendiente de aprobación al momento en que se presentó la solicitud. Esta norma, sin embargo, proviene de las jurisdicciones estadounidenses que han decidido no aplicar la norma general:

> Although there are major exceptions, the rule followed in most jurisdictions is that a newly adopted prohibitory zoning regulation may ordinarily be applied with retroactive effect to bar issuance of a building permit that was duly applied for prior to the adoption or the effective date of the new regulation. **Some jurisdictions, however, refuse to follow the general rule if the new zoning regulation was not "pending"** —that is, officially proposed or in actual process of enactment—when the application for the building permit was filed. (Énfasis suplido) Roland F. Chase, J.D., Retroactive effect of zoning regulation, in absence of saving clause, on pending application for building permit, 50 A.L.R.3d 596, sec. 2 (1973). [23]

---

[23] "We consider first the threshold question as to whether the applicant's rights are to be measured under Ordinance 85 in

(Continúa . . .)

No creo que en este caso debamos desviarnos de la regla aplicada por la mayoría de las jurisdicciones. Al condicionar la retroactividad a que la nueva reglamentación esté pendiente de aprobación cuando se presenta la consulta, la norma minoritaria de la "reglamentación pendiente" reconoce, implícitamente, que el solicitante tiene el derecho a que su solicitud sea evaluada bajo la reglamentación vigente al momento en que la presenta. Eugene McQuilin, The Law of Municipal Corporations, Third Ed. (2000), Vol. 8, pág. 571, sec. 25.155.[24] Esto limita y condiciona la facultad administrativa de aplicar retroactivamente la nueva reglamentación.

---

effect at the time of the application, or under Ordinance 133 in effect at the time this case went to trial. Idaho has adopted the **minority** view that the applicant's rights are measured under the law in effect at the time of the application. See: McQuillin, The Law of Municipal Corporations, s 25.155 (3d ed.1965). In Ben Lomond, Inc. v. City of Idaho Falls, 92 Idaho 595, 601, 448 P.2d 209, 215 (1968), we stated:

> "At least in those cases like the present one, in which no zoning ordinance was pending at the time an application for a building permit is filed, it is our opinion that an applicant is **entitled** to a building permit upon compliance with the then existing ordinance." (Énfasis suplido) Ready-To-Pour, Inc. v. McCoy, 511 P2d 792, 795 (1973).

[24] "However, even if he has not made the substantial expenditures in reliance upon the city's position necessary to create an estoppel, he is still **entitled** to obtain a building permit which is within the provisions of existing zoning so long as the rezoning ordinance which would preclude the intended use is not pending at the time when a proper application is made." Smith v. City of Clearwater, 383 So. 2d 681, 689 (1980).

Opino que reconocer este derecho constreñiría innecesariamente la discreción administrativa y resultaría en una incongruencia jurídica. Por un lado, la norma de la "reglamentación pendiente" reconocería un derecho adquirido a que se adjudique la solicitud bajo la reglamentación vigente al momento de presentarse una consulta de ubicación, mientras que por el otro, nuestro ordenamiento no reconoce la adquisición de derecho alguno sino hasta que se logre la aprobación final de la consulta y se haya incurrido en gastos sustanciales actuando a base de dicha aprobación. Fraternidad Phi Delta Pi v. Junta de Planificación, *supra*.

Además, la norma de la "reglamentación pendiente" limitaría la aplicación de un reglamento con efecto retroactivo válido, ya que condiciona dicha aplicación a que el reglamento esté pendiente de aprobación al momento de presentarse la solicitud de un permiso o consulta de ubicación. Esto traería como consecuencia práctica la aprobación de permisos que no estarían conformes con la reglamentación vigente en determinado momento y que responderían, en vez, a una reglamentación derogada. En el contexto de un reglamento de zonificación implicaría la aprobación de usos no conformes a la zonificación vigente, precisamente el efecto que la Junta de Planificación debe evitar.

En el caso ante nuestra consideración, el recurrido propuso el desarrollo de un parque industrial pesado a ser

ubicado en la Cuenca Hidrográfica de la Laguna Tortuguero. Conforme a la norma hoy establecida por la Mayoría de este Tribunal, si el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero no hubiese estado pendiente de aprobación cuando el recurrido presentó la consulta de ubicación, la Junta de Planificación no hubiera podido aplicarlo y al resolver la consulta se habría visto obligada a desacatar el reglamento vigente a esa fecha que prohíbe <u>de forma expresa</u> la aprobación en esa cuenca hidrográfica de proyectos industriales como el aquí propuesto. La incongruencia me parece evidente.

IV

Por todo lo anterior, concurro con la Opinión Mayoritaria respecto a que el Plan y Reglamento Especial para la Cuenca Hidrográfica de la Laguna Tortuguero era aplicable a la consulta de ubicación presentada por el recurrido y que a la luz de las disposiciones del reglamento procedía la denegación de la consulta. Sin embargo, disiento de la adopción de la norma de la "reglamentación pendiente" en nuestra jurisdicción.

Nuestro derecho atiende la presente controversia sin necesidad de introducir nuevas fuentes de derechos adquiridos o irretroactividad. Ante una controversia sobre la aplicación retroactiva de un reglamento, debemos determinar, en primer lugar, si el reglamento tiene efecto retroactivo; en segundo lugar, si la agencia que lo adopta tiene la facultad delegada de otorgarle efecto retroactivo a ese reglamento; y en tercer

lugar, si se trata de una aplicación retroactiva válida. El momento en que fue propuesto o estaba pendiente de aprobación el nuevo reglamento realmente no debe ser pertinente.


Liana Fiol Matta
Jueza Asociada